James A. Patten (MT Bar No. 1191)
Molly S. Considine (MT Bar No. 13800)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 2nd Avenue North, Suite 300
P.O. Box 1239
Billings, MT 59103-1239
Telephone: (406) 252-8500
Facsimile: (406) 294-9500
Email: apatten@ppbglaw.com
       mconsidine@ppbglaw.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| IN RE:<br><br>BRIDGER STEEL, INC.,<br><br>               Debtor. | Case No. 2:23-bk-20019-BPH<br><br>**EMERGENCY MOTION (1) FOR USE OF CASH COLLATERAL, (2) SALE OF PROPERTY, AND (3) WAIVE NOTICE** |
|---|---|

      BRIDGER STEEL, INC., Debtor and Debtor-in-Possession ("Bridger Steel"), by and through its attorneys, James A. Patten and Molly S. Considine, move this Court for Entry of an Order pursuant to 11 U.S.C. §§ Sections 105, 361, 362, 363 and 507 of the Code, and F. R. Bankr. Pro. 4001(b) (i) authorizing the use of cash collateral, (ii) authorize the sale of property, (iii) waive notice of the hearing on the sale of property, and (iv) schedule an emergency preliminary hearing and a final hearing no earlier than 14 days after service of this Motion, pursuant to F. R. Bankr. Pro. 4001(b), 9006, 9007, 9013 and 9029.

      In support hereof, the Debtor states as follows:

1

# INTRODUCTION

1. Through this Combined Motion, Bridger Steel seeks authority to immediately sell certain items of personal property subject to liens and to use the sale proceeds to pay on-going operating costs, specifically including but not limited to the payment of payroll and associated costs. Without the relief requested, Bridger Steel will be forced to furlough its employees commencing on Saturday, March 18, 2023. In addition, Bridger Steel seeks the use of the proceeds of pre and post-petition sales of products which are also cash collateral.

2. This Court has jurisdiction over this case, the parties, and Bridger Steel's property pursuant to 28 U.S.C. §§ 157(b)(2)(M) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

3. Venue for this proceeding and the Motion are proper under 28 U.S.C. §§ 1408 and 1409. As of the date herein, the Office of the United States Trustee has not appointed an official committee of unsecured creditors or any other official committee.

4. Bridger Steel has opened its debtor in possession account at Stockman Bank.

## BACKGROUND AND CURRENT BUSINESS OPERATIONS

5. Bridger Steel fabricates and sells metal roofing and siding products and accessories. Generally, Bridger Steel receives a payment at the time of a purchase from its customer in the amount of 75% of the total purchase price with the remaining 25% paid when Bridger Steel delivers the purchased good. Due to variations in the gauge and color of the steel available to be purchased, Bridger Steel does not maintain an inventory of steel, but instead will order a coil of a certain gauge and color when Bridger Steel can buy a full coil of the steel; Bridger Steel then cuts and bends the particular steel per the buyer's specifications. Bridger Steel commenced this case because of its liquidity crisis which impairs its ability to purchase steel

with which it fabricates into roofing and siding for sale to the public. As a consequence of Bridger Steel's illiquidity, Bridger Steel has a number of cancelled purchase contracts and was unable to refund the 75% initially paid which are identified on Schedule F of its bankruptcy schedules. Bridger Steel has otherwise scheduled its open and pending contracts on Schedule G of its bankruptcy schedules.

6. The Bridger Steel employs 57 paid employees and contract employees. The payroll and associated costs due for payment on Friday, March 17, 2023 is $198,767. Bridger Steel's credit card processor has refused to release credit card receipts since the commencement of this case and has recently advised Bridger Steel that it will only release such charges upon proof that Bridger Steel has delivered the product to the customers who have paid for the product by credit card. Bridger Steel generates a significant portion of its revenue from credit card purchases. Due to Bridger Steel's illiquidity and the structure of its operations, there is a delay in delivering product. Specifically, the delay is due to (i) the requirement that Bridger Steel pay for steel product before such product is shipped to Bridger Steel; and (ii) steel product is purchased in "coils" and it is economically efficient to purchase coils of certain colors and gauges when there are sufficient outstanding purchase contracts for that particular color and gauge.

7. Bridger Steel has $91,344 in bank deposits as of this date. It anticipates it will be unable to fund the upcoming payroll due to the conditions imposed by Platinum.

8. Bridger Steel has agreed, subject to this Court's approval, the sale of surplus equipment sufficient to fully fund the March 17 payroll. The sale of equipment is detailed in ¶ 10 *infra*. The equipment to be sold is subject to certain purchase money liens which Bridger Steel proposes be paid from the sale proceeds. In addition, there are three "blanket" lien holders: PSB Credit Services ("PSB"), LCF Group Inc. ("LCF"), and Seamless Capital Group, LLC

("Seamless"). Both LCF and Seamless loan agreements are commonly known as "merchant loans" and are structured as purchases of future income. Bridger Steel entered into a third merchant loan with Capytal, com ("Capytal"). Capytal does not assert a lien on equipment but does assert a lien on accounts and general intangibles.

9. The Bridger Steel entered into the following loan agreements prior to the commencement of this case:

   a. PSB:
      i. Assignment of Bank of America loan #XXXXX5877 dated August 21, 2017 with the maximum principal of $3,000,000 ("2017 Loan");
      ii. Promissory note dated November 18, 2020 in the principal amount of $1,369,506.01 ("Lease Refinance Loan");
      iii. Promissory Note dated March 18, 2022 in the principal amount of $1,700,000 ("March 2022 Loan");
      iv. Promissory Note dated June 10, 2022 in the principal amount of $2,500,000 ("June 10 , 2022 Loan"); and
      v. Promissory Note dated September 8, 2022 in the principal amount of $1,900,000 ("September 8,2022 Loan").
      vi. As of the commencement of this case, the total owed to PSB was $8,013,637.17.
      vii. PSB is secured by all Bridger Steel's personal property pursuant to security agreements with Wells Fargo Bank, assigned to Bank of America, and further assigned to PSB starting in 2015 and perfected

through a UCC-1 filings with the Montana Secretary of State on February 4, 2015 through July 7, 2022.

    viii. PSB is also secured by mortgages on real property owned by a guarantor, Dennis Johnson or his affiliates.

b. LCF entered and funded a cash advance agreement dated December 19, 2022 in the amount of $521,500 purchasing future income; LCF filed a UCC-1 asserting a lien on all assets, with the Montana Secretary of State on December 21, 2022.

c. Seamless entered and funded a cash advance agreement dated January 3, 2023 in the mount of $74,950 of future accounts income; Seamless filed a UCC-1 asserting a lien on all assets with the Montana Secretary of State on January 31, 2023.

d. Capytal entered and funded a cash advance agreement dated January 18, 2023 in the amount of $166,100; Capytal filed a UCC-1 with the Montana Secretary of State on January 19, 2023.

e. Machinery Finance Resources, LLC ("MFR"), as lessor, entered into a lease ("MFR Lease") with Bridger Steel for the acquisition of a SWI 5 Ton Powered Decoiler with Coil Car ("MFR Equipment") through a lease dated July 18, 2018; a copy of the MFR Lease is attached hereto as **Exhibit A.** The MFR Lease is a finance lease as evidenced by the $1 Purchase Option on the front page of the MFR Lease. The total amount owed to MFR owed on the lease is $156,238. The MFR debt secured by the MFR Equipment will be paid from the sale proceeds. MFR filed UCC-1's with the Montana Secretary

of State on May 3, 2018, June 5, 2018, July 30, 2018, September 28, 2018, March 27, 2019, September 11, 2019, September 17, 2019, March 19, 2020, December 4, 2020, December 7, 2020, December 11, 2020, March 25, 2021,

f. Midland Equipment Finance ("Midland"), as lessor, entered into a lease ("Midland Lease") with Bridger Steel for the acquisition of an RAS XXL-Center Metal Folder ("Midland Equipment"); a copy of the Midland Lease is attached hereto as **Exhibit B.** The Midland Lease is a finance lease as evidenced by ¶ 7b of the lease. The Midland debt secured by the Midland Lease will be paid from the sale proceeds. Midland filed a UCC-1 with the Montana Secretary of State on September 11, 2019.

10. Bridger Steel proposes to sell the following equipment at the prices indicated:

a. RAS XXL Center Metal Folder to Long Creek Steel for gross price of $320,000; the property is secured by Midland who is owed $209,000. The net proceeds retained by Bridger Steel is $111,000.

b. SWI Marxman Pro Slitting Line to SWI for gross price of $250,000; property is secured by MFR who is owed $156,238. The net proceeds retained by Bridger Steel is $93,762.

c. SWI 5 Ton Powered Decoiler to SWI for gross price of $20,000; property is secured by MFR. The net proceeds retained by Bridger Steel is $20,000.

d. SWI 5 ton Powered Decoiler to SWI for gross price of $20,000; property is secured by MFR. The net proceeds retained by Bridger Steel is $20,000.

e. SWI 5 Ton Decoiler to SWI for gross price of $15,000; property is secured by MFR. The net proceeds retained by Bridger Steel is $15,000.

f. SWI Marxman SS1220 Trim Slitter to SWI for gross price of $60,000; property is secured by MFR. The net proceeds retained by Bridger Steel is $20,000.

g. 2015 Dodge 5500 truck to ProTech for the gross price of $35,200; property is secured by PSB. The net proceeds retained by Bridger Steel is $32,500.

h. Two inch Industrial power seamer kit, Piccolo seamer 25/38, 2011 Piccolo seamer, ESE Power seamer, and two inch ML power seamer each for $2500 to Salty Metals for a total of $15,000.

i. The total to be received by Bridger Steel from the foregoing sales is $294,762.

11. The total value of Bridger Steel's property potentially subject to the PSB, LCF, and Seamless debt is $10,351,905; the value of the guarantor of the PSB debt real property mortgaged to PSB is $4,200,000; the total value of property securing Bridger Steel's secured debt is $14,551,905. The total secured debt of Bridger Steel is $7,362,455. There is a 50% equity cushion for PSB, LCF, Seamless, and Capytal. Without consideration of the real property pledge by the guarantor, the secured creditors enjoy a 29% equity cushion in the Bridger Steel property.

12. The LCF and Seamless claims indebtedness are disputed based on this Court's decision in *Shoot the Moon*, 635 B.R. 797 (Bankr. D. Mont. 2021), and subject to usury claims whose damages, if successful, will result in no additional debt owed by Bridger Steel.

13. Each of PSB, LCF and Seamless claims, if allowed, are protected by a 20% or greater equity cushion.

14. As noted above, Bridger Steel's credit card processor has ceased distribution of Bridger Steel's credit card receipts and has informed Bridger Steel that it will not distribute any

credit card receipt until Bridger Steel can document the delivery of the purchased product to the buyer. As a consequence Bridger Steel's post-petition receipts are limited to payments made by check, ACH, or wire transfer payments. Bridger Steel, until adequately liquid, is reliant upon the sale of surplus equipment, or upon debtor-in-possession financing to contribute to the funding of operations during the pendency of this case.

15. In addition, as noted, secured creditors PSB, LCF, and Capytal claim an interest in accounts and general intangibles which could include the 25% payment of the pre-petition open contracts scheduled on Schedule G. These creditors are adequately protected if this Court permits Bridger Steel to use cash collateral arising from the completion of such contracts.

## LEGAL STANDARD

16. 11 U.S.C. § 363(c)(2) prohibits Bridger Steel from using, selling, or leasing cash collateral unless (i) the entity with an interest in the cash collateral consents, or (ii) the court, after notice and hearing authorizes such use, sale, or lease in accordance with the provisions of this section. The hearing "may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of Debtor." 11 U.S.C. § 363(c)(3). If the hearing is preliminary, "the court may authorize the use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section." *Id.*

17. 28 U.S.C. § 363(e) states that an entity with an interest in the cash collateral may request adequate protection. Once requested, the court shall, with or without hearing, condition or prohibit the "use, sale, or lease of the cash collateral as is necessary to provide adequate protection of such interest." *Id*. The term adequate protection is not defined by the Code. 11 U.S.C. § 361 identifies three non-exclusive examples of what may constitute adequate protection: (a) periodic

cash payments that are equivalent to the decreased value of the entity's interest in the cash collateral; (b) an additional or replacement lien on other property; or (c) other relief that provides an indubitable equivalent. *In re Curtis*, (B. Ct. E.D. Penn. 1981), 9 B.R. 110, 111-112.

18. "An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone can provide adequate protection under the Code." *In re Interstate Distributing Co., Inc.*, (D. Mont. 1993), 13 Mont. B.R. 86, 89 – 90 (citing *In re Mellor*, (9th Cir. 1984), 734 F.2d 1396 at 1400). The term "equity cushion" means "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during [*sic*] time the automatic stay remains in effect." *In re Mellor*, 734 F.2d. at 1400 n.2. The courts have found an equity cushion greater than or equal to 20% is sufficient to provide adequate protection to a secured creditor under the Code. *See In re WRB W. Assocs. Joint Venture*, (Bankr. D. Mont. 1989), 106 B.R. 215, 220 (equity cushion of 40% was enough to provide adequate protection to secured creditor); *see also In re Mellor*, 734 F.2d at 1401 (stating that a 20% equity cushion has been held to provide adequate protection to a secured creditor).

## LEGAL ANALYSIS

19. Bridger Steel has an immediate and critical need to fund its ongoing operations. Bridger Steel's business will suffocate if it is unable to pay its day-to-day expenses, during the pendency of this proceeding. As noted, Bridger Steel, from time to time, receives payment of the 25% final payment to provide the funds to pay its operating costs. This arrangement is properly identified as an "executory contract" using the *Countryman* definition: "a contract under which the obligation of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the

performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy*: Part 1, 57 Minn. L. Rev. 439, 460 (1973).

20. Bridger Steel desires to avoid the untimely demise of its operations by using the cash collateral to pay its ongoing costs. The cash collateral will provide Bridger Steel with sufficient liquidity to pay its ongoing wages and other operating costs while it works toward restructuring its debts. An actual cash budget showing actual cash receipts and expenses through December 31, 2023 and projected receipts and expenses through the end of the year is attached as **Exhibit C**. The cash collateral resulting from sale of equipment and the payment of the executory contracts will be significant sources of operating funds during the pendency of this case.

21. Bridger Steel believes the PSB has adequate protection by virtue of its pre-petition, perfected security interest in Bridger Steel's equipment, inventory, accounts, instruments, chattel paper, and general intangibles combined with the value of the guarantor's real property pledged to PSB. The equity cushion is approximately 50%. This percentage surpasses 20%, and as such, demonstrates that PSB is adequately protected from diminution in the value of its interest in the cash collateral. The disputed claims of LCF, Seamless, and Capytal also hold adequate protection from their claimed liens.

22. Bridger Steel requests that the Court hold a preliminary hearing on this Motion pursuant to F. R. Bankr. Pro. 4001(b) because Bridger Steel must have liquid resources to pay its employees and fund the day-to-day operations of its facilities. Bridger Steel has a payroll due Friday, March 17 in the amount of $198,767. The grant of a preliminary hearing on Thursday, March 16 will facilitate Bridger Steel's ability to fund that payroll.

23. The circumstances of the PSB, LCF, Seamless and Capytal loans including objections to the LCF, Seamless, and Capytal debt, the value of the Bridger Steel assets resulting

in the adequate protection of these creditors demonstrates a strong likelihood that it will prevail at the final hearing as required by 11 U.S.C. § 363(e).

24. Bridger Steel proposes to terminate its use of the cash collateral without prior notice or order of the Court whenever the following events occurs ("Termination Date"): the effective date of any confirmed chapter 11 plan.

25. Prior to the Termination Date, either party may move this Court, after notice and hearing, for a modification or extension of Bridger Steel's use of the cash collateral, or the parties may mutually agree in writing to such a modification or extension.

26. This Court has the authority to regulate notices. F. R. Bankr. Pro. 9007. Every motion is to be served within the time determined by F. R. Bankr. Pro. 2006; Rule 2006(c) permits a reduction of time for "cause shown." While reduction of time is not permitted for the numerous matters described in F. R. Bankr. Pro. 9006(c)(2), none of them are implicated in this Motion. F. R. Bankr. Pro. 9029 permits this Court to practice in any manner consistent with federal law, the Federal Rules of Bankruptcy Procedure and the Montana Local Bankruptcy Rules. The relief hereby sought is consistent with the Federal Rules of Bankruptcy Procedure and the Local Rules. Rule 4001(a) (2) permits *ex parte* relief on a sale of property pursuant to 11 U.S.C. § 363(e) without notice if it clearly appears from facts shown by affidavit that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. Submitted herewith is the Declaration of Srinivas Anday, the Bridger Steel Chief Executive Officer. Mr. Anday explains that if the sale motion is not granted, Bridger Steel will be unable to pay its March 17 payroll and employees will have to be furloughed and will likely seek and obtain other employment; the loss of many of the Bridger Steel employees will

deprive Bridger Steel of years of experience and will further impair Bridger Steel's ability to reorganize in this chapter 11 case.

27. Based on the foregoing, Bridger Steel believes that its use of the cash collateral through the Termination Date reflects its exercise of prudent business judgment in a manner that is consistent with its fiduciary duties and is in the best interests of Bridger Steer's principals, estate, creditors.

28. This Motion is being served on the U.S. Trustee, Jason R. Naess, PSB, LCF, Capytal, Seamless, Midland Equipment, MFR, and the creditors listed on the Schedule of 20 largest unsecured claims.

WHEREFORE, Bridger Steel, Inc. respectfully requests that this Court:

1. Schedule a hearing at its earliest available time and date for a preliminary hearing on the Cash Collateral and Sale Motion;

2. Authorize Bridger Steel Inc. to sell, pursuant to 11 U.S.C. § 363(e) and Fed. R. Bankr. Pro. 4001(a)(2), to sell the property identified to be sold in the Cash Collateral and Sale Motion without notice;

3. Authorize Bridger Steel, Inc. to use cash collateral resulting from the sale of the property identified to be sold in the Cash Collateral and Sale Motion;

4. Authorize Bridger Steel, Inc. to use cash collateral resulting from the collection of pre-petition accounts; and

5. Schedule a final hearing on the Cash Collateral and Sale Motion not earlier than 14 days from the date hereof.

Dated this 14th day of March, 2023.

                                **PATTEN, PETERMAN, BEKKEDAHL**
                                       **& GREEN, P.L.L.C.**
                              2817 Second Ave. North, Suite 300
                              P.O. Box 1239
                              Billings, MT  59103-1239


                              By   /s/JA Patten
                                  James A. Patten
                                  Attorney for Debtor


CERTIFICATE OF SERVICE

     I, the undersigned, do hereby certify under penalty of perjury that on the 14th day of February, 2023 a copy of the foregoing was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

See attached mailing matrix
*The attached list will not be mailed
out to creditors but will be on
file with the United States
Bankruptcy Court.  A copy will
be provided upon request


                              /s/JA Patten
                              Patten, Peterman, Bekkedahl & Green PLLC