

## Lease Agreement



Machinery Finance Resources, LLC
651 Day Hill Road, Windsor, CT 06095
With Questions call: (860) 687-3375 FAX To: (860) 687-3376

| For Office Use Only |
|---|
| Lease Agreement Number: 183770 |
| Lease Agreement Date: July 18, 2018 |
| Rental Commencement Date: _____ |

### Lessee Information

| Lessee's Full Legal Name | | | | |
|---|---|---|---|---|
| Bridger Steel, Inc. | | | | |
| Street Address | County | City | State | Zip |
| 1558 Amsterdam Road | Gallatin | Belgrade | MT | 59714 |
| Location of Equipment | Billing Address (if different than above) | | | |
| 2550 N Hendrickson Drive, Building 7418, Kalama, Cowlitz, WA 98625 | | | | |

### Equipment

| Qty | Serial # | Description | See Schedule A for any additional equipment |
|---|---|---|---|
| | | | |

**Initial Term of Lease (Months)**
Seventy-Two (72)

**Purchase Option:** One Dollar ($1.00) as more fully described on the Lease Addendum Purchase Option attached hereto and made a part hereof.

**Amount of Each Lease Payment**
$7,649.00     Plus all applicable taxes

**Payment Period:** [X] Monthly  [ ] Quarterly  [ ] Other

**COST OF EQUIPMENT/AMOUNT FINANCED:** $463,500.00

### Advance Payments

[X] FIRST (1ST) AND SEVENTY-SECOND (72ND) LEASE PAYMENTS DUE IN ADVANCE.

### Personal Guaranty

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.
In consideration of Lessor entering into the lease agreement identified above ("Lease"), the undersigned Personal Guarantor (hereinafter "You") unconditionally and irrevocably guarantees to Lessor, its successors and assigns, the prompt payment and performance of all obligations of the Lessee identified in this Lease. You agree that this is a guaranty of payment and not of collection, and that Lessor can proceed directly against you without first proceeding against the Lessee or against the equipment covered by the Lease. You waive all notices and defenses, based upon suretyship or impairment of collateral, including but not limited to release of collateral or failure to perfect a security interest. You agree that Lessor can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all obligations of the Lessee under the Lease including, but not limited to, paying all amounts due under the Lease. You will pay to Lessor all expenses INCLUDING ATTORNEYS' FEES incurred in enforcing Lessor's rights against you or the Lessee. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Lessee in the event you must pay Lessor. If more than one guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize Lessor or any of Lessor's agents to obtain credit bureau reports regarding your personal credit and to make other credit inquiries that Lessor determines are necessary.
THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CONNECTICUT. YOU CONSENT (AND THE LESSEE HAS CONSENTED) TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CONNECTICUT. YOU EXPRESSLY WAIVE (AS HAS THE LESSEE) ANY RIGHT TO A TRIAL BY JURY.

| Personal Guarantor #1 Name: | Personal Guarantor #2 Name: | Personal Guarantor #3 Name: | Personal Guarantor #4 Name: |
|---|---|---|---|
| X (an individual)   Date | X (an individual)   Date | X (an individual)   Date | X (an individual)   Date |
| X Witness   Date | X Witness   Date | X Witness   Date | X Witness   Date |

### TERMS & CONDITIONS

1. By signing this Lease, Lessee acknowledges and agrees that: it has read and understands the TERMS AND CONDITIONS OF THIS LEASE; this Lease becomes effective only upon written acceptance by an authorized employee of Lessor; this is a net lease; it cannot terminate or cancel this Lease; it has an UNCONDITIONAL OBLIGATION to make all payments due under this Lease; it cannot withhold, set off or reduce such payments for any reason; it will use the Equipment only for business purposes; the person signing this Lease has the authority to do so and to grant the POWER OF ATTORNEY set forth in paragraph 11 herein; it entered into this Lease rather than purchase the Equipment. THIS LEASE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CONNECTICUT; AND LESSEE SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED IN THE STATE OF CONNECTICUT. LESSEE AND LESSOR EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

| Lessee: Bridger Steel, Inc. | Lessor: Machinery Finance Resources, LLC |
|---|---|
| X /s/ Authorized Signature | X Authorized Signature |
| Dennis Johnson   President   7/18/2018 | Deborah M. Senk, Vice President Operations |
| Print Name and Title   Date | Print Name and Title   Date |

Page 1 of 3                    **THIS LEASE IS NON-CANCELABLE**

**2. LEASE.** Lessee agrees to Lease from Lessor the Equipment identified on the Lease Agreement and/or the Schedule A attached and made a part of this Lease.

**3. DISCLAIMER OF WARRANTIES: LIMITATION OF LIABILITY.** LESSOR IS LEASING THE EQUIPMENT TO THE LESSEE "AS-IS". LESSEE ACKNOWLEDGES THAT THE LESSOR DOES NOT MANUFACTURE THE EQUIPMENT, LESSOR DOES NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND LESSEE HAS SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON LESSEE'S OWN JUDGMENT.
LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, NOR WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. LESSEE AGREES THAT REGARDLESS OF CAUSE, LESSOR IS NOT RESPONSIBLE FOR AND LESSEE WILL NOT MAKE ANY CLAIM AGAINST LESSOR FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT. LESSEE AGREES THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS LESSOR'S AGENT OR HAS ANY AUTHORITY TO SPEAK FOR LESSOR OR TO BIND LESSOR IN ANY WAY. LESSOR TRANSFERS TO LESSEE FOR THE TERM OF THIS LEASE ANY WARRANTIES MADE BY THE MANUFACTURER OR SUPPLIER UNDER A SUPPLY CONTRACT.

**4. ORDERING EQUIPMENT, DELIVERY AND ACCEPTANCE.** If Lessee entered into any purchase or supply contract with any supplier, Lessee assigns to Lessor Lessee's rights under the supply contract, but none of Lessee's obligations, except for the obligation to pay for Equipment if it is accepted by Lessee according to the terms of this Lease. If Lessee has not entered into a supply contract, Lessee authorizes Lessor to enter into a supply contract. Lessee shall arrange for the delivery of the Equipment to Lessee. Lessee shall inspect the Equipment immediately upon Lessee's receipt of the Equipment to determine if it is in good working condition. The Equipment will be deemed irrevocably accepted by Lessee upon the delivery to Lessor of a signed Certificate of Acceptance ("Acceptance Date").

**5. TERMINATION BY LESSOR.** Lessor shall have the exclusive option to terminate this Lease if within 90 days after Lessee has signed this Lease, the Equipment has not been delivered to Lessee, or Lessee has not accepted the Equipment as provided in paragraph 4.

**6. TERM AND LEASE PAYMENTS.** The term of this Lease commences upon the date on which the Equipment is delivered to Lessee and accepted by Lessee's execution of a Certificate of Acceptance for the Equipment ("The Term Commencement Date:") and ends upon the expiration of the number of months specified on the front of this Lease under "Initial Term of Lease". The Lessee shall pay as rent the total Lease Payments indicated on the front of this Lease plus applicable taxes ("Lease Payment"). The first Lease Payment is due on the Term Commencement Date, and each remaining periodic Lease Payment is due on the same day of each payment period thereafter for the initial term of lease. No portion of any Lease Payments shall be deemed to constitute payment for any equity interest in the Equipment. If any payment due under this Lease is not paid within 10 days of its due date, Lessee shall pay Lessor a late charge not to exceed 5% of each late payment, plus interest on such delinquent payment of 1.5% per month (or such lesser rate as is the maximum rate allowed by applicable law). Lessee authorizes Lessor to insert in this Lease as "Tax on Lease Payment" and "Total Lease Payment" the appropriate amounts when same are determined by Lessor.

**7. EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** Lessee will keep and use the Equipment only at the Equipment Location shown on the front of this Lease. Lessee may not move the Equipment without Lessor's prior written consent. At Lessee's own cost and expense, Lessee will keep the Equipment in good repair, condition and working order. All alterations, additions and replacements will become part of the Equipment and Lessor's property at no cost or expense to Lessor. Lessor may inspect the Equipment at any reasonable time. Unless Lessee purchases the Equipment at the end of this Lease, Lessee will immediately deliver the Equipment to Lessor to any place in the United States that Lessor tells Lessee. Lessee will pay all expenses of deinstalling, crating, and shipping. Lessee shall insure the Equipment for its full replacement value during shipping. Upon notice of its intention to return, Lessee will return the Equipment in the same condition as of the Acceptance Date (ordinary wear and tear resulting from proper use excepted). Lessee shall provide a letter from the manufacturer certifying that the Equipment has been inspected and tested and meets all current specifications of the manufacturer and is in compliance with all pertinent governmental and regulatory rules, laws or guidelines for its operation or use. The lease term will continue upon the same terms and conditions until re-certification has been obtained and provided to the Lessor.

**8. TAXES.** Lessee shall promptly reimburse Lessor for, or shall pay directly if so requested by Lessor, as additional Lease payments, all taxes, charges and fees which may now or hereafter be imposed or levied by any governmental body or agency upon or in connection with the purchase, ownership, lease, possession, use, location or relocation of the Equipment, or otherwise in connection with the transactions contemplated by the Lease, excluding, however, all taxes on or measured by the net income of Lessor. Lessee agrees to reimburse Lessor for all personal property taxes immediately upon receipt of Lessor's invoice including without limitation such taxes assessed or arising during the term of this Lease but remitted by Lessor after the termination of this Lease. At Lessor's option, Lessee agrees to remit, along with Lessee's lease payments under this lease, an amount equal to a percentage of Lessor's reasonable estimate of the personal property taxes that will be assessable against the Equipment. Any such amounts remitted to Lessor will be credited by Lessor against Lessee's obligations under this paragraph. Lessee will remain obligated in the event such amounts are insufficient to fully reimburse Lessor for the actual amount of such taxes. Any surplus will either be credited to Lessee's other obligations to Lessor or returned to Lessee. If requested, Lessee agrees to file promptly on behalf of Lessor all requested tax returns and reports concerning the Equipment in a form satisfactory to Lessor, with all appropriate governmental agencies and to mail a copy to Lessor concurrently with the filing thereof. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relevant to the use of the Equipment and aforesaid taxes, assessments and other governmental charges.

If a Fair Market Value purchase option is indicated on the face hereof, Lessor shall be entitled to claim Tax Benefits (hereinafter defined). In the event Lessor shall not be entitled, for any reason, to all or any portion of the Tax Benefits (a "Loss"), and after 30 days written notice from Lessor that a Loss has occurred, Lessee shall pay to Lessor a lump sum amount as stated in the notice which, in Lessor's reasonable opinion, will cause Lessor's after-tax economic yield and overall net after tax cash flows to be maintained at the same level as though the Loss had not occurred. As used in this Section, "Tax Benefits" means any deduction under Section 168 of the Internal Revenue Code of 1986 and interest deductions with respect to any indebtedness incurred by Lessor with respect to acquisition of Equipment by Lessor, and assuming an effective corporate tax rate on Lessor of 34%

**9. PURCHASE OPTION; AUTOMATIC RENEWAL.** If no Default exists under this Lease, Lessee will have the option at the end of the Initial or any renewal term to purchase all (but not less than all) of the Equipment as shown on the front of this Lease, plus any applicable taxes. Lessee must give Lessor at least 90 days written notice before the end of the Initial Term that Lessee will purchase the Equipment or that Lessee will deliver the Equipment to Lessor. If Lessee does not give Lessor such written notice or if Lessee does not purchase or deliver all but not less than all of the Equipment in accordance with the terms and conditions of this Lease, this Lease will automatically renew for an additional 4 month term and thereafter renew for successive one month terms until Lessee delivers the Equipment to Lessor or purchases the Equipment. During such renewal(s) the amount of each Lease Payment will remain the same. Lessor may cancel an automatic renewal term by sending Lessee written notice 10 days prior to such renewal term. If the Fair Market Value ("FMV") Purchase Option has been selected, Lessor will use Lessor's judgment to determine the Equipment's FMV. FMV shall mean the retail, not wholesale, FMV determined solely by the Lessor. Upon payment of the Purchase Option price to Lessor plus all applicable taxes, Lessor shall transfer it's interest in the Equipment to Lessee "AS IS, WHERE IS" without any representations or warranties whatsoever and this Lease will terminate.

**10. USE; REPAIRS; LOSS OR DAMAGE; CASUALTY VALUE.** Lessee will operate the Equipment in accordance with any applicable Manufacturers' manuals by competent and duly qualified personnel only, in accordance with applicable requirements of law, if any, and for business purposes only. Lessee shall bear all risk of loss associated with an item of Equipment, including the theft, destruction, or damage. No such loss shall relieve Lessee from any of its obligations under this Lease. In the event of any loss with respect to particular Equipment, Lessee shall either: (a) place such Equipment in good repair, condition and working order, (b) replace such Equipment with like equipment (of the same year, make, model and accessories) in good repair, condition and working order, or (c) pay to Lessor the "Casualty Value" which will equal the total of (i) all Lease Payments and other amounts, if any, due from Lessee to Lessor at the time of such payment, (ii), each future Lease Payment due discounted at 4% per annum, assuming a three hundred sixty (360) day year, from the date due to the date of such payment and (iii) the Lessor's (or its assignee's) anticipated residual value.

**11. INSURANCE.** Lessee shall keep in effect an "All Risk" extended coverage property insurance policy covering the Equipment for its full replacement value. Lessee shall also carry a comprehensive general liability insurance policy or other similar form of third party liability coverage. Such policies shall be in form, amount and with insurers acceptable to Lessor. The property insurance policy shall name Lessor and its assigns as Loss Payee and the general liability insurance policy shall name Lessor and its assigns as an Additional Insured. Each policy shall provide: (a) for no less than thirty (30) days prior written notice of cancellation or non-renewal to Lessor, and (b) that such policy shall not be invalidated as against Lessor or its assigns for the violation of any term of the policy by Lessee. Lessee appoints Lessor as Lessee's attorney-in-fact to request required insurance coverages, make claims, receive payments and execute and endorse all documents, checks, drafts or other instruments necessary or advisable to secure payments due under any policy contemplated hereby. The foregoing shall not relieve Lessee from its obligations to procure the insurance policies required herein, to make timely insurance claims and to otherwise cooperate with insurance carriers and Lessor in seeking insurance coverage and recoveries in connection with the Equipment. Proceeds from any general liability policy shall be made payable first on behalf of the Lessor to the extent of its liability, if any. All policies of insurance carried by Lessee, whether primary or excess, shall be primary as to any policies maintained by Lessor. If Lessee does not provide Lessor with evidence of proper insurance within 10 days of Lessor's request or Lessor receives notice of policy cancellation, Lessor may (but is not obligated to) obtain insurance on Lessor's interest in the equipment at Lessee's expense. Lessee agrees to pay all insurance premiums and related charges. In spite of the payment of such risk charge, Lessee has no right or claim to any insurance benefits from Lessor. Lessee is still liable for all losses, and such risk charge is not in lieu of the insurance requirements of this Lease.

**12. TITLE.** Lessor is the owner of and will hold title to the Equipment. Lessee will keep the Equipment free of all liens and encumbrances. If this transaction is deemed to be a lease intended for security, Lessee grants Lessor a purchase money security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds).

**13. DEFAULT.** Each of the following is a "Default" under this Lease: (i) Lessee fails to pay any Lease Payment or any other payment within 10 days of its due date; (ii) Lessee does not perform any of Lessee's other obligations under this Lease or in any other agreement with Lessor; (iii) Lessee or guarantor becomes insolvent, dissolves, or assigns its assets for the benefit of creditors, or enters any bankruptcy or reorganization proceeding; or (iv) any guarantor of this Lease dies, does not perform its obligations under the guaranty; or (v) an event of default under any other obligation Lessee or any guarantor of this Lease has with Lessor, (vi) if Lessee shall terminate its existence by merger, consolidation, sale of substantially all of its assets or otherwise; or (vii) any representation or warranty made by Lessee to Lessor shall prove to be incorrect or the condition of Lessee's affairs shall change so as in the opinion of Lessor to materially impair Lessor's interest or increase materially Lessor's credit risk.

Lessee has reviewed this page and certifies that each of the provisions set forth is clear and legible. Lessee initials X _IJ J_

**14. REMEDIES.** If a Default occurs, Lessor may do one or more of the following: (i) Lessor may cancel or terminate this Lease or any other agreement that Lessor has entered into with Lessee; (ii) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, an amount equal to the sum of (a) all Lease Payments and other amounts due under the Lease as of the date of Default plus (b) the sum of all remaining unpaid Lease Payments discounted using a rate of 4% per annum, plus (c) Lessor's (or its assignee's) anticipated residual value; (iii) Lessor may require Lessee to deliver the Equipment to Lessor as set forth in paragraph 7; (iv) Lessee agrees to pay all of Lessor's or its agents or assigns costs of enforcing Lessor's rights against Lessee including reasonable attorney's fees, (v) repossess the Equipment without court order and Lessee will not make any claims against Lessor for damages or trespass or any other reason; and (vi) Lessor or it's agent may peacefully exercise any other right or remedy available at law or in equity. If Lessor takes possession of the Equipment, Lessor may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after deducting all costs related to the sale or disposition of the Equipment) to the amounts that Lessee owes Lessor. Lessee agrees that if notice of sale is required by law to be given, 10 days notice shall constitute reasonable notice. Lessee will remain responsible for any amounts that are due after Lessor has applied such net proceeds. Lessor may exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Lessor's other rights.

If this Lease is deemed at any time to be a lease intended as security, Lessee grants Lessor a security interest in the Equipment, including any replacements, substitutions, additions, attachments and proceeds, to secure its obligations under this lease and all other indebtedness at any time owing by Lessee to Lessor and agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.

**15. PERFORMANCE OF LESSEE'S OBLIGATIONS BY LESSOR.** If Lessee fails to make any payment or perform any act or obligation required hereunder, Lessor may, but need not, make such payment or perform such act or obligation at the expense of Lessee. Any such expense incurred by Lessor shall constitute additional lease payments due hereunder and shall be payable by Lessee to Lessor upon demand. Such action by Lessor shall not be deemed a cure or waiver of any default by Lessee.

**16. FINANCE LEASE STATUS.** Lessee agrees that if Article 2A-Leases of the Uniform Commercial Code applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A. By signing this Lease, Lessee agrees that either (a) Lessee has reviewed, approved, and received, a copy of the Supply Contract or (b) that Lessor has informed Lessee of the identity of the Supplier, that Lessee may have rights under the Supply Contract, and that Lessee may contact the Supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

**17. ASSIGNMENT.** LESSEE MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR LESSEE'S INTEREST IN THIS LEASE. Lessor may, without notifying Lessee, sell, assign, or transfer this Lease or its rights in the Equipment. Lessee agrees that the new owner will have the same rights and benefits that Lessor has now under this Lease but not Lessor's obligations. Lessee agrees to pay without abatement, deduction or set-off all amounts which become due under the Lease and the rights of the new owner will not be subject to any claim, recoupment claim, defense or set-off that Lessee may have against Lessor.

**18. INDEMNITY.** Lessee assumes the risk of liability arising from manufacture, possession, operation, or use of the Equipment. Lessee shall indemnify, defend and hold harmless the Lessor from any and all claims, costs, taxes, expenses, damages, and liabilities, including liability for death or injury to persons, damage to property, strict liability under the laws or judicial decisions of any state or the United States, and legal expenses in defending any claim brought to enforce any such liability or expense arising from or pertaining to the manufacture, use, possession, or operation of the Equipment.

**19. CREDIT INFORMATION.** Lessee authorizes Lessor and its agents and assigns to obtain credit bureau reports and make other credit inquiries that Lessor determines necessary. Lessee shall at Lessor's request, deliver to Lessor Lessee's future annual reports of financial condition, which reports Lessee represents and warrants shall be prepared in accordance with generally accepted accounting principles within 120 days after the close of each of Lessee's fiscal year, and upon Lessor's request within 45 days of the end of each quarter, it being understood that all such material shall be held in confidence by Lessor. Lessee hereby appoints Lessor, with full power of substitution, as its agent and attorney-in fact, which is irrevocable and coupled with an interest, to execute any such financing statements under the Uniform Commercial Code and any appropriate amendments thereto on Lessee's behalf which Lessor deems necessary to protect Lessor's interest in the Equipment. Lessor may file a duplicate or a photocopy of the Lease as a financing statement.

**20. FURTHER ASSURANCES.** Lessee agrees to promptly, at Lessee's expense, deliver such other reasonable documents and assurances, and take such further action as Lessor may request, in order to effectively carry out the intent and purpose of this Lease.

**21. REPRESENTATIONS AND WARRANTIES.** Lessee represents and warrants to Lessor that: (i) the making of this Lease by Lessee is duly authorized on the part of Lessee and upon execution thereof by Lessee and Lessor they shall constitute valid obligations binding upon, and enforceable against, Lessee; (ii) neither the making of this Lease nor the due performance thereof by Lessee, including the commitment and payment of the Lease payments, shall result in any breach of, or constitute a default under, or violation of, Lessee's certificate of incorporation, by-laws, or any agreement to which Lessee is a party or by which Lessee is bound; (iii) Lessee is in good standing in its state of incorporation and in any jurisdiction where the Equipment is located, and is entitled to own property and to carry on business therein; and (iv) all financial information provided by Lessee to Lessor is true, accurate and provides a good representation of Lessee's financial condition. If requested, Lessee shall provide Lessor a Certified Copy of it's Corporate Resolutions and or a Certificate of Incumbency in the form provided by Lessor or such other form that Lessor deems acceptable.

**22. MISCELLANEOUS.** Lessee agrees that the terms and conditions contained in this Lease make up the entire agreement between Lessee and Lessor regarding the Lease of Equipment. The declaration of invalidity of any provision of this Lease and/or Guaranty shall not affect any part of the remainder of the provisions of this Lease and Guaranty. Any change in any of the terms and conditions of this Lease must be in writing and signed by Lessor. Lessee agrees however, that Lessor is authorized, without notice to Lessee, to insert the Lease Number, and to supply missing information or to correct obvious errors in this Lease. Lessee authorizes Lessor to adjust the Amount of Each Rental Payment by not more than 15% if either (i) the final Total Cash Price (which is all amounts Lessor has paid in connection with the purchase, delivery and installation of the Equipment, including any upgrade and buyout amounts) differs from the estimated Total Cash Price, or (ii) comparable U.S. Treasury Note yields increase between the date Lessee signs this Lease and the Acceptance Date. Lessor shall not be obligated to purchase the Equipment if the actual Total Cash Price varies more than 15% from the Total Cash Price listed above. If Lessor delays or fails to enforce any of Lessor rights under this Lease, Lessor will still be entitled to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail or a nationally recognized overnight delivery service, addressed to the party receiving the notice at its address shown on the front of this Lease (or to any other address specified by that party in writing) with postage prepaid. All of Lessor's right and remedies, including but not limited to those set forth in Sections 8, 18 and 21 herein, shall survive and remain in full force and effect and be enforceable after the expiration or termination of the Lease for any reason. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess payment will be applied to Lease payments in inverse order to maturity, and any remaining excess will be refunded to Lessee. If more than one Lessee has signed this Lease each of the Lessees agree that Lessee's liability is joint and several. LESSEE FURTHER AGREES TO PAY LESSOR A DOCUMENTATION FEE ON THE DATE THE FIRST RENTAL PAYMENT IS DUE TO COVER THE EXPENSES OF ORIGINATING THIS LEASE.

Lessee has reviewed this page and certifies that each of the provisions set forth is clear and legible.

Lessee initials X *J. J.*

Page 3 of 3

2:23-bk-20019-BPH   Doc#: 15-2   Filed: 03/14/23   Page 3 of 19



**MACHINERY FINANCE RESOURCES**

651 Day Hill Road
Windsor, CT 06095
With Questions call: (888) 808-0834

Lease Agreement Number: 183770

Lease Agreement Date: July 18, 2018

## Schedule A (Equipment)

| Qty | Equipment | Serial # |
|---|---|---|
| | **Equipment Location: 2110 Overland Ave, Ste #121, Billings, MT 59102** | |
| 2 | New SWI 5 Ton Powered Decoiler with Coil Car | |
| | **Equipment Location: 2550 N Hendrickson Drive, Bldg 7418, Kalama, WA 98625** | |
| 1 | New SWI Marxman Pro Slitter | |
| 1 | New SWI 5 Ton Powered De-Coiler | |
| 1 | New SWI 5 Ton De-Coiler | |
| 1 | New SWI 5 Ton Re-Coiler | |
| 2 | New SWI Film Applicator Rod with Collars | |

with all standard options & accessories

Lessee has reviewed this page, and agrees the data on this Schedule A is accurate. Lessee Initials X _A.J._



## Lease Addendum
## Purchase Option

Re: Lease Agreement Number: 183770

This letter will serve as a formal addendum to the above referenced Lease Agreement between Machinery Finance Resources, LLC ("Lessor") and Bridger Steel, Inc. ("Lessee").

Lessor hereby acknowledges Lessee shall have the option to purchase the equipment described in the above referenced Lease Agreement for one dollar ($1.00) at lease expiration. In order to exercise the $1.00 option Lessee must not be in default under any of the provisions of the lease.

Lessee shall file as party responsible for payment of personal property tax. Lessee shall promptly pay in full for all property taxes levied on or assessed against the Equipment listed on the above referenced Lease Agreement during the initial term and all renewals and extensions. Lessee shall provide proof of said filing or payment to Lessor upon request.

Dated as of: July 18, 2018

BRIDGER STEEL, INC.
(Lessee)

By: X _____
Title: President

MACHINERY FINANCE RESOURCES, LLC
(Lessor)

By: _____
Title: Vice President Operations



## ADDENDUM "A"

This Addendum is made a part of Lease Agreement Number 183770 ("Lease") identified above by and between Bridger Steel, Inc. ("you" and "your") and Machinery Finance Resources, LLC ("we", "us" and "our"). Capitalized terms used but not defined will have the same meaning given to them in the Lease.

The following paragraph is hereby added to and made a part of the Lease

> **RATE ADJUSTMENT:** Notwithstanding any provision contained in the Lease to the contrary, you agree that the Lease Payments may be increased by us if there has been a change in our internal cost of funds (the "Base Rate") to the Monday (or next business day if such Monday is not a business day) of the week in which the Acceptance Date occurs. The Acceptance Date shall be defined as the date you accept the Equipment and furnish us with a fully executed Certificate of Acceptance, and all items required for funding have been received by Lessor. The amount of any such adjustment shall be determined by changing the implicit rate of the Lease by one (1) basis point for every basis point increase in the Base Rate. No change will be reflected in any Lease Payments collected in advance of the adjustment. We will provide you with a written notice of any adjustment in the Lease Payments.

This Addendum supplements and amends the Lease identified above only to the extent and in the manner set forth, and in all other respects the Lease will remain in full force and effect.

| MACHINERY FINANCE RESOURCES, LLC (LESSOR) | BRIDGER STEEL, INC. (LESSEE) |
|---|---|
| By: _____ | By: X _/s/_____ |
| Title: Vice President Operations | Title: President |
| Date: _____ | Date: July 18, 2018 |

Early Termination Addendum

ADDENDUM "B"

RE: Equipment Lease # 183770, dated July 18, 2018 between BRIDGER STEEL, INC. as Lessee and MACHINERY FINANCE RESOURCES, LLC as Lessor (the "Lease").

This Addendum is effective as of the date set forth below to amend and supplement the Lease. All terms and conditions of the Lease shall remain in full force and effect except to the extent modified by this Addendum; and all capitalized terms used in this Addendum and not otherwise defined herein shall have the meanings assigned in the Lease.

(1) Notwithstanding anything in the Lease to the contrary, Lessee may voluntarily terminate the Lease at any time during the initial term, provided no default has occurred and is then continuing under the Lease, by paying to Lessor the following "Aggregate Termination Payment", in immediately available funds: (i) all amounts then due and payable under the Lease, plus (ii) all installment rent and other payments for the remaining term of the Lease, discounted to present value to the effective date of such termination, using the implicit contract rate (the "Termination Value"), plus (iii) a termination fee equal to 6% of the Termination Value if the effective date of such termination occurs on or before the first (1st) anniversary date of the Lease, or 5% of the Termination Value if the effective date of such termination occurs after the first (1st) anniversary date of the Lease but on or before the second (2nd) anniversary date of the Lease, or 4% of the Termination Value if the effective date of such termination occurs after the second (2nd) anniversary date of the Lease but on or before the third (3rd) anniversary date of the Lease, or 3% of the Termination Value if the effective date of such termination occurs after the third (3rd) anniversary date of the Lease but on or before the fourth (4th) anniversary date of the Lease, or 2% of the Termination Value if the effective date of such termination occurs after the fourth (4th) anniversary date of the Lease but on or before the fifth (5th) anniversary date of the Lease or 1% if the effective date of such termination occurs after the (5th) anniversary of the date of the Lease but on or before the sixth (6th) anniversary date of the Lease, or 0% if the effective date of such termination occurs after the sixth (6th) anniversary date of the Lease. All calculations made by Lessor under this Addendum shall be conclusive absent manifest error.

(2) Notwithstanding anything in the Lease to the contrary, in the event that Lessor exercises its right to terminate the Lease under Section 13, the Lease will be deemed terminated as of the date that the event of default leading to exercise of such remedy first occurred, and Lessee shall pay Lessor the Aggregate Termination Payment, calculated in accordance with paragraph (1) of this Addendum.

(3) Notwithstanding anything in the Lease to the contrary, in the event of a loss of any item of Equipment, as described in Section 10 of the Lease, the Lease will be deemed terminated with respect to such item as of the date of such loss and Lessee shall pay Lessor the Aggregate Termination Payment with respect to such item. For purposes of calculating the Aggregate Termination Payment with respect to such item of Equipment, the payments and Termination Value attributable to such item shall bear the same proportion to the total Lease payments and Termination Value as the cost of such item bears to the total Equipment cost as of the Acceptance Date.

(4) Following Lessor's receipt of the Aggregate Termination Payment from Lessee upon a voluntary Lease termination under paragraph (1) of this Addendum and upon request by Lessee, Lessor will deliver a bill of sale transferring the Equipment to Lessee. Lessor hereby warrants that at the time of transfer the Equipment will be free of all security interests and other liens created by or arising through Lessor. LESSOR MAKES NO OTHER WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT.

(5) Lessee agrees to pay all sales and use taxes arising on account of any transfer of the Equipment pursuant to this Addendum.

Date as of July 18, 2018

LESSOR: Machinery Finance Resources, LLC

By: _____
Vice President Operations

LESSEE: Bridger Steel, Inc.

By: X _____
Title: President



Please complete your Insurance Agent's information below:

Company: Leavitt Group
Address: 3390 Colton Dr. Suite A
City, State, Zip: Helena, MT 59602
Contact: Dalena Baker
Phone Number: 406-324-7486
E-Mail Address: Dalena-baker@leavitt.com

In compliance with the terms and conditions of the Lease Agreement, we acknowledge the following with respect to insurance coverage:

1. Lessee is required to provide insurance coverage on the equipment and to provide Machinery Finance Resources, LLC with a Certificate of Insurance. Minimum requirements are:

    A.) All Risk or Special Form coverage in an amount equal to the full equipment value.
    B.) Public liability and property damage naming Machinery Finance Resources, LLC and their Assigns as Loss Payee and Additional Insured.
    C.) A provision that the insurance cannot be canceled, reduced or altered without thirty days prior written notice to Machinery Finance Resources.
    D.) Please include deductible amounts on the certificate.

2. Insurance certificates must reference Lease # 183770. Please fax the Certificate of Insurance to 860-687-3376 and mail the original copy to:

    Machinery Finance Resources, LLC
    651 Day Hill Road
    Windsor, CT 06095

If you should have any questions in this regard please contact Machinery Finance Resources at 860-687-3375.

## Agreed & Acknowledged:

Bridger Steel, Inc.

By: X _____

Title: President

Date: July 18, 2018



# Manufacturer's Sales and Use Tax Exemption Certificate
# For Manufacturing Machinery and Equipment

*Type of Certificate*

☐ Single Use Certificate

☒ Blanket Certificate (Blanket certificates are valid for as long as the buyer and seller have a recurring business relationship. A "recurring business relationship" means at least one sale transaction within a period of twelve months. RCW 82.08.050 (7)(c)).

1. Buyer/User UBI/Revenue Tax Registration No. __X 90-0639801__
2. Name of Buyer/User __Bridger Steel, Inc.__
3. Address of Buyer/User __1558 Amsterdam Road__
   Street Address

   __Belgrade__          __MT__          __59714__
   City                   State           Zip Code

4. Name of Seller __Machinery Finance Resources, LLC__

The buyer/user certifies that it is engaged in manufacturing or processing for hire activities and that the items purchased will be used directly in manufacturing or processing for hire operation. A single use certificate must be used each time an exempt item is a purchased. **The seller must keep a copy of the certificate for his/her records.**

To be considered "used directly" in a manufacturing operation or research and development operation, the machinery and equipment must:

- Act upon or interact with an item of tangible personal property;
- Convey, transport, handle, or temporarily store an item of tangible personal property at the manufacturing site;
- Control, guide, measure, verify, align, regulate, or test tangible personal property;
- Provide physical support for or access to tangible personal property;
- Produce steam or mechanical power for, or lubricate machinery and equipment;
- Produce another item of tangible personal property for use in the manufacturing operation or research and development operation;
- Place tangible personal property in the container, package, or wrapping in which the tangible personal property is normally sold or transported;
- Be integral to research and development as defined in RCW 82.63.010; or
- Be for repair and replacement parts or repair and cleaning labor for eligible items.

The sales and use tax exemption does not include:

- Consumable items;
- Hand-powered tools;
- Property with a useful life of less than one year;
- Building fixtures that are not integral to the manufacturing operation that are permanently affixed to and become a physical part of a building. This includes utility systems for heating, ventilation, air conditioning, communications, plumbing, or electrical.

> ➢ *This certificate is given with full knowledge of, and subject to, the legally prescribed penalties for fraud and tax evasion.*

**Do not attach to the Combined Excise Tax Return.**

Authorized Agent of Buyer/User (please print) __Dennis Johnson__
Authorized Signature  X __/s/__          Title __President__
Date __7/18/18__

For tax assistance, visit dor.wa.gov or call 1-800-647-7706. To inquire about the availability of this document in an alternate format for the visually impaired, please call (360) 705-6715. Teletype (TTY) users may call 1-800-451-7985.

REV 27 0021e (8/28/09)

## AUTHORIZATION FOR AUTOMATIC ELECTRONIC PAYMENT

By signing and completing this Authorization and returning it to Machinery Finance Resources, LLC (together with its successors and assigns, "Creditor"), you authorize all payments due to Creditor under all existing and future agreements with Creditor (as amended or otherwise modified from time to time, the "Contracts") to be made from the designated account on the terms and conditions set forth herein.

**Please make your regular payment until your invoice indicates that automatic electronic payment will be made.**

Please complete the following (if any account information is not completed, you authorize Creditor to rely on the attached check or deposit slip to obtain the relevant information).

Name of Account Holder: Bridger Steel, Inc.

Authorized Signature: _M_     Date: July 18, 2018

Title of Signor (if Account Holder is NOT an individual): President

Name of Financial Institution: First Interstate Bank

Account Number: ___--_0900_____ (Account is a ☑ Checking Account or ☐ Savings Account)

Bank Routing Number: _____1683_____ (usually found next to account number)

### PLEASE ATTACH A VOIDED CHECK
(a deposit slip may be attached if account does not have checks)

**Terms and Conditions:** You authorize Creditor to initiate debit entries to your designated account for making your payments due to Creditor, including your regularly scheduled payment amount plus any past due amounts and any other outstanding fees and charges due and owing under your Contracts. Creditor typically will initiate such debit entries on your regularly scheduled due dates. If a due date falls on a weekend or holiday, Creditor may initiate the debit entries on either (i) the last business day prior to the due date or (ii) the first business day after the due date. If an attempted debit entry is returned for any reason, including insufficient funds, Creditor may assess a fee for each failed debit entry and may, but is not required to, attempt the debit entry up to two (2) more times. Creditor also may make credit entries to your designated account for purposes of adjusting debit entries made in error.

This authorization will remain in full force and effect until Creditor has received written notice of your intent to cancel this authorization in such time and in such manner as to afford Creditor a reasonable opportunity to act on such notice. Creditor may cancel or suspend your automatic payment at any time and require non-automatic payments. If Creditor suspends automatic payment at its discretion, it may subsequently resume automatic payment.

Automatic electronic payments are ☐ REQUIRED (if this box is NOT checked, automatic electronic payments are optional). If the "Required" box is checked, you will be in default under your Contracts if you cancel automatic payment. This additional default provision is hereby added to your Contracts as if stated therein. If the "REQUIRED" box is checked, please initial:

Initial: _____

You represent that the designated account is used primarily for business and commercial purposes. You should immediately notify Creditor of any automatic payment error. If you desire to change the account from which automatic payments are made, you must timely notify Creditor and execute a new Authorization for Automatic Electronic Payment. If you receive notice that Creditor has assigned a Contract, the assignee of Creditor shall have all rights of Creditor under this Authorization and any notices by you should be sent to the assignee.

Payments under this Authorization will be made using the automated clearing house ("ACH") funds transfer system and will be made in accordance with this authorization, the ACH Rules and other applicable law in effect from time to time. This authorization does not alter or lessen your obligations under your Contracts including but not limited to those provisions regarding the amount of the monthly payments, when payments are due, the application of payments, the assessment of late charges or the determination of delinquencies.

**For Office Use Only (do not complete)**

Contract No(s). _____    First ACH Date: _____





# MASTER CERTIFICATE OF INCUMBENCY

The undersigned being duly elected and acting as **Secretary** of Bridger Steel, Inc. (the "Lessee") does hereby certify that the person or persons listed below are authorized representatives of the Lessee in the capacity set forth opposite their names and that their signatures are true and correct and, as of the date hereof, have proper corporate power and authority to execute and deliver any Lease documents and other documents related to entering into a Lease Agreement with Machinery Finance Resources, LLC, and all documents required thereunder.

| Name (Print) | Title | Sample Signature |
|---|---|---|
| Dennis Johnson | President | X /M/ |
|  |  |  |

I hereby attest that this information is true and correct as of X 7/18/2018
(insert date)

Bridger Steel, Inc.

X R.C.
Title: Secretary



We Speak Your Language

July 18, 2018

Mr. Dennis Johnson
Bridger Steel, Inc.
1558 Amsterdam Road
Belgrade, MT 59714

Dear Mr. Johnson,

Enclosed please find the following documents in regards to our equipment lease transaction with your company.

1) Master Certificate of Incumbency – please have the Corporate Secretary sign and date the bottom. The authorized signators for these documents should be written in the middle of the document along with the capacity in which they will be signing. Their specimen signatures are required on this form. Please note, the people listed in this middle section will be the only people authorized to execute the documents.
2) Lease Agreement – the bottom of page 1 to be signed and the bottom of pages 2 and 3 to be initialed.
3) Schedule A (Equipment Schedule) – to be initialed.
4) Certificate of Acceptance – please retain this document until the equipment is delivered and acceptable. At that time please fill in the Acceptance Date, have the bottom signed, and return to MFR.
5) Lease Addendum Purchase Option – to be signed.
6) Addendum "A" – to be signed.
7) Addendum "B" – to be signed.
8) Insurance Letter – please complete your insurance agent's information and sign the bottom.
9) Tax Exempt Cert – please complete and sign.
10) Authorization for Automatic Electronic Payments (optional) – please complete and return along with a copy of a voided check.

Please return the fully executed documents along with your check in the amount of $15,698.00 using the enclosed Federal Express airbill.

Please do not hesitate to contact me if you should have any questions in this regard.

Very truly yours,
MACHINERY FINANCE RESOURCES, LLC

*Barbara Norman*

Barbara Norman
Senior Documentation Specialist



## CERTIFICATE OF ACCEPTANCE

In compliance with the terms, conditions and provisions of Lease Agreement Number 183770 dated July 18, 2018 ("Lease") by and between the undersigned ("Lessee") and Machinery Finance Resources, LLC ("Lessor"), Lessee hereby:

a) certifies and warrants that all Equipment described in the above-referenced Schedule A or the Lease Agreement (the "Equipment") is delivered, inspected and fully installed, and operational as of the Acceptance Date as indicated below;

b) accepts all the Equipment for all purposes under the Lease and all attendant documents as of this _____ day of _____ (month), 20_____ (Acceptance Date").

c) agrees that for this Certificate of Acceptance, and the Equipment relative to the same restates and reaffirms, as of such Acceptance Date, each of the representations, warranties and covenants heretofore given to Lessor in the Lease.

Bridger Steel, Inc.
(Lessee)

X __/m/_____    President
Signature                                                                  Title

Lessor is hereby authorized to insert serial numbers on the Lease Agreement.



**BRIDGER STEEL INC**
2110 OVERLAND AVE SUITE 121
BILLINGS, MT 59102

Check # 3896
19-2/1250 WA 99439

Bank of America
ACH R/T 125000024

Date: 7/27/2018

PAY TO THE ORDER OF: Machinery Finance Resources        $ **15,698.00

Fifteen thousand six hundred ninety eight and 00/100************************************ DOLLARS

Machinery Finance Resources
651 Day Hill Road
Windsor CT 06095
United States

MEMO: Down Payment on Lease 183770

AUTHORIZED SIGNATURE

⑆003896⑆ ⑈125⑉ 138110437244⑈

---

**BRIDGER STEEL INC**

Machinery Finance Resources

3896
7/27/2018

| | | |
|---|---|---|
| 1410 Other Current Asset : Deposits | Inv# 183770 - 1st and 72nd Lease Payment | 15,298.00 |
| 7240 Expense : Bank Fees : Loan Fees | Inv# 183770 - Documentation Fee | 400.00 |

1030 Cash : BofA Op Acct x7244    Down Payment on Lease 183770                15,698.00

ENDORSE HERE

X _____

☐ CHECK HERE IF MOBILE DEPOSIT

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
⇩ RESERVED FOR FINANCIAL INSTITUTION USE ⇩

024  003896

BRIDGER STEEL INC

Security Features exceed Industry standards and include:
- ImageMatch℠: Matching account and check number on back (Patent No. 9,240,088)
- MobileMark℠: Mobile Deposit check mark to indicate check has been deposited via mobile device
- The Security Weave® pattern on back designed to deter fraud
- Microprint (*MP*) lines printed on front and back
- The words "ORIGINAL DOCUMENT" across the back
- Photo Safe Deposit® Icon visible on front and back

Do not cash if:
- Any of the features listed above are missing or appear altered
- Fugitive Ink on back looks pink or has disappeared
- Brown stains or colored spots appear on both front and back, and in Chemical-Wash Detection Box



P O Box 403
Senoia, GA 30276
770.891.4388
info@swimachinery.com



Invoice NO.  7518-2
DATE  July 5, 2018

Bill To:
Bridger Steel
1558 Amsterdam Road
Belgrade, MT 59714
Dennis Johnson

Ship To:
Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIP VIA | TERMS |
|---|---|---|---|---|
| Jason Smoak | | | Best Way | see below |

| QUANTITY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 1 | 5 Ton Powered De-coiler with coil car | $ | - |
|   | Pnuematic snubber arm | | |
|   | Automatic speed control via laser loop measurement | | |
|   | Remote control for manual operation | | |
| 1 | Additional 5 Ton De-coiler with coil car | | |

| Payment Terms | Down payment | $ | 10,000.00 |
|---|---|---|---|
| | 30% at halfway point in production | TBD | |
| | 30% upon shipment from factory | TBD | |
| | 10% upon completion of installation | TBD | |

Warranty: On OEM electrical components 12 months (excludes lamps, relays and fuses)/ Mechanical Items (excluding consumables, seals, etc.) 3 years/ Structural 5 years

| | | |
|---|---|---|
| SUBTOTAL | $ | 58,500.00 |
| Received | | |
| Remaining Balance | | 58,500.00 |
| Due Now | $ | 10,000.00 |

We appreciate your business!



**SWI**
SHEETMETALMACHINERY
SWIMACHINERY.COM

P O Box 403
Senoia, GA 30276
770.891.4388
info@swimachinery.com

# Invoice

Invoice NO.  7518
DATE  July 5, 2018

Bill To:
Bridger Steel
1558 Amsterdam Road
Belgrade, MT 59714
Dennis Johnson

Ship To:
Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIP VIA | TERMS |
|---|---|---|---|---|
| Jason Smoak | | | Best Way | see below |

| QUANTITY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 1 | Marxman Pro L to R | $ | - |
| | - 8 pairs of auto setting blades, 2 over 3 straightening | | |
| | suitable for material 49" wide to 16ga/1.6mm | | |
| | 1 spare set of slitting knives | | |
| 1 | 5 Ton Powered De-coiler with coil car | $ | - |
| | Pnuematic snubber arm | | |
| | Automatic speed control via laser loop measurement | | |
| | Remote control for manual operation | | |
| 1 | Additional 5 Ton De-coiler with coil car | | - |
| 1 | 5 Ton Re-Coiler with coil car | | - |
| 2 | Additional film applicator rods with collars | | - |
| 1 | Spare set of cut off slitting knives | | - |
| | Includes shipping and installation and training | | |

| Payment Terms | Down payment | $ | 10,000.00 |
|---|---|---|---|
| | 30% at halfway point in production | TBD | |
| | 30% upon shipment from factory | TBD | |
| | 10% upon completion of installation | TBD | |

Warranty: On OEM electrical components 12 months (excludes
lamps, relays and fuses)/ Mechanical Items (excluding consumables,
seals, etc.) 3 years/ Structural 5 years

| | | |
|---|---|---|
| SUBTOTAL | $ | 405,000.00 |
| Received | | |
| Remaining Balance | | 405,000.00 |
| Due Now | $ | 10,000.00 |

We appreciate your business!

# INVOICE

## Machinery Finance Resources, LLC

*We Speak Your Language*

651 Day Hill Road
Windsor, CT 06095
Phone: (860) 687-3375  Fax: (860) 687-3376

**DATE:**
July 18, 2018

**INVOICE #**
183770

**Tax Payer I.D. #**
56-2499785

**Bill To:**
BRIDGER STEEL, INC.
1558 AMSTERDAM ROAD
BELGRADE, MT 59714

**Remit To:**
MACHINERY FINANCE RESOURCES, LLC
651 DAY HILL ROAD
WINDSOR, CT 06095

| DESCRIPTION | AMOUNT |
|---|---|
| 1ST LEASE PAYMENT | $7,649.00 |
| 72ND LEASE PAYMENT | $7,649.00 |
| DOCUMENTATION FEE | $400.00 |
| **TOTAL DUE** | **$15,698.00** |

Make all checks payable to Machinery Finance Resources, LLC
If you have any questions concerning this invoice, please contact us at (860) 687-3375
(Please note, MFR's payments to equipment suppliers cannot be made prior to our receipt of this payment)

**THANK YOU FOR YOUR BUSINESS!**