# LEASE AGREEMENT

**Midland**
Equipment Finance
A division of Midland States Bank

Lease Agreement No. 827-226263-001
Dated: September 10, 2019

| LESSOR: Midland States Bank | LESSEE: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Type and State of Organization: S Corp, MT |
| | Federal Tax ID: 90-0639801 |

**EXHIBIT B** (tabbies)

## LEASE TERMS

| TOTAL EQUIPMENT COST | EQUIPMENT DESCRIPTION | | EQUIPMENT LOCATION |
|---|---|---|---|
| $446,364.00 | See the attached Exhibit A | | See the attached Exhibit A |
| **SECURITY DEPOSIT** | **ADVANCE PAYMENTS** $6,232.00 FOR PAYMENT(S): First | **INITIAL LEASE TERM** (in months) 84 | **CUT-OFF DATE** January 7, 2020 |
| **RENT PAYMENT AMOUNTS (S)** 84 @ $6,232.00 Payments in Advance | **COMMENCEMENT DATE** Acceptance Date: _____ Commencement Date: _____ | | **END OF LEASE TERMS** Mandatory Purchase: $1.00 |

The word "Lease", "the Lease" or "this Lease" means this Lease Agreement, the words "you" and "your" mean Lessee and the words "we", "us" and "our" mean Lessor. **This Lease shall not be effective until executed by you and accepted by an authorized representative of ours.**

1. **Lease.** You hereby agree to lease from us, subject to the terms and conditions herein, the personal property and equipment in the Equipment Description above or any schedule attached hereto, all software and/or software licenses acquired in an integrated transaction with the equipment or acquired principally for use in or otherwise with the equipment, together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto, wherever located and whether now owned or hereinafter acquired, and all proceeds of the foregoing, including, any insurance recoveries and all general intangibles relating to or arising therefrom, all products thereof and all cash and non-cash proceeds (including insurance proceeds) of the equipment (the "Equipment"). THIS IS A NET LEASE THAT CANNOT BE CANCELLED OR TERMINATED FOR ANY REASON AND IS AN ABSOLUTE AND UNCONDITIONAL OBLIGATION, WHICH SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF OR DEFENSE OF ANY KIND. You agree to make payment of all Rent Payments and other amounts due hereunder and you cannot withhold or reduce any amounts for any reason, including but not limited to the condition or performance of the Equipment.

2. **Lease Term and Payments.** You will pay all Rent Payments due hereunder to us in the Rent Payment Amount(s) above for the full Initial Lease Term of this Lease. The above Commencement Date for this Lease is determined as follows: (i) the fifteenth (15th) day of the month if the above Acceptance Date is on the first (1st) day through the fifteenth (15th) day of the month; and (ii) on the first (1st) day of the month if the above Acceptance Date is on the sixteenth (16th) through the final day of such month. The Acceptance Date shall be the date all Equipment is delivered to the Equipment Location, fully installed, in good operating order and fully accepted by you in an executed Delivery and Acceptance Certificate satisfactory to us. If we do not receive the executed Delivery and Acceptance Certificate by the Cut-Off Date, then we may terminate this Lease. You authorize us to insert or correct the Commencement Date or Acceptance Date above. The first Rent Payment is due on the Commencement Date, if the Rent Payments above are stated to be "made in advance", or if the payments above are stated to be "made in arrears", then the first Rent Payment shall be due on the date that is one month after the Commencement Date. All subsequent Rent Payments are due on the same day of each month thereafter, at the above address or other address provided, whether an invoice is rendered, until all amounts due under this Lease are paid in full and all obligations satisfied. You are responsible for all costs of shipping, transportation, and other charges relating to delivery and acceptance of the Equipment. Upon execution of this Lease, you will pay any Advance Payment(s)(non-refundable) and we may also charge you costs incurred in the origination of this Lease. Any Security Deposit will constitute security for performance of your obligations and shall not bear any interest. In an Event of Default, we may apply any Security Deposit to amounts due hereunder, and if no Event of Default occurs, we will return the Security Deposit (or remaining balance) to you upon satisfaction of all Lease obligations. On the Commencement Date, you will pay an interim amount of rent ("**Interim Rent**"), equal to the product of: (i) each Rent Payment Amount (if multiple Rent Payment Amount(s) are listed above, then using the Rent Payment Amount for the majority of the Rent Payments), multiplied by, (ii) 1/30th, multiplied by, (iii) the number of days from the Acceptance Date to (and excluding) the Commencement Date. If the Acceptance Date is on the 1st or the 15th of the month, then the Commencement Date and Acceptance Date are the same and no Interim Rent is due. All Interim Rent is calculated on a 360-day year basis and due as stated on your invoice.

3. **Late Payments; Payment Changes and Application.** Time is of the essence. We may charge a late fee, not to exceed the greater of $50.00 or ten percent (10%), of any Rent Payment or other amount not paid within ten (10) days of when due and charge a non-sufficient funds fee of $36.00 for each check or draft request returned for insufficient funds or other similar reason(s). Any late fee(s) or other fee(s) charged hereunder shall not exceed the maximum amount permitted under applicable law, and if any court, regulatory agency or other similar authority determines any amount(s) to be usurious, then such amounts will be reduced to the maximum amount permitted by law. Any excess amounts paid deemed usurious will be applied to your obligations hereunder until fully satisfied with any remaining excess amount(s) refunded. We reserve the right to increase the Rent Payment Amount and the total Lease amount by up to ten percent (10%) for changes in final amounts paid to a vendor, without notice to or consent by you; provided that, for any change greater than ten percent (10%), you will execute a written amendment. Each Payment is based upon various factors, including the like term swap rate, published by the Intercontinental Exchange ("ICE"), on the Internet website (http://www.theice.com/marketdata/reports/180), for the Series/Run "USD Rates 1100", as updated and published by ICE daily, or if no longer published, then a similar successor index selected by us. This Lease is established at the index rate of 1.46 (the "**Swap Rate**") as of September 9, 2019. Should the Swap Rate increase as of the Funding Date, you agree each Rent Payment and the total amount due hereunder shall be adjusted to reflect such increase, with such revised Swap Rate remaining fixed thereafter. We will use best efforts to send you notice of any Swap Rate increase, however, failure to send or to receive, such notice, shall not be a defense. All Rent Payment Amount(s) received by us will be applied: (i) to each Rent Payment due and outstanding, in order of most delinquent, and for each such Rent Payment, first to any accrued but unpaid amounts due under the Implicit Lease rate, and then to the rent amount of such Payment; next (ii) to any late fees owed for any due but unpaid Rent Payment(s); next (iii) to any other costs owed us; and finally (iv) any remaining balance applied to future Rent Payment(s) in the order due. We may adjust your final Rent Payment based on a recalculating the remaining balance to properly reflect the total amount due

and resulting yield intended for this Lease.

4. **Taxes**. You are liable for and will pay when due, and upon request file all tax filings for all taxes, including sales and use taxes, property taxes, license and registration fees, assessments, penalties, and other charges relating to this Lease or the Equipment. We are not liable for any sales, use, personal property or other taxes relating to the Lease or the Equipment. We may pay certain tax amounts necessary to protect our interests and you will immediately reimburse us. If this Lease is a Mandatory Purchase Lease, we will report any sales and use taxes and you will report all personal property taxes and provide us proof of payment(s) and filing(s).

5. **Equipment.**

   a. **Equipment Location and Use**. You agree to keep the Equipment at the Equipment Location within the continental United States, and you will not remove the Equipment without our prior written consent, except for temporary removal, which may occur in the ordinary course of our business (such as transport to a job site, motor vehicles, cargo transport, etc.). We may enter your premises during normal business hours to confirm the existence of and inspect the Equipment and your business records. At your expense, you will keep the Equipment in good operating order for which it was designed and intended, in accordance with manufacturer's recommendations and in compliance with all applicable laws, regulations and insurance requirements. You will furnish any required parts and labor required and not make any alterations or additions to the Equipment without our prior written consent. Any additions, attachments, or replacements to the Equipment become part of the Equipment with our security interest in the Equipment will include all modifications, additions, replacements and substitutions to the Equipment. The Equipment will be used solely for business purposes at the Equipment Location and not for personal or household purposes. The Equipment is and will remain, personal property and not a fixture to real estate and you will not permit any ownership or other interest in or to the Equipment. You will not attempt to sell, assign, grant a security interest in, sublease, pledge, or otherwise encumber or cause a lien upon the Lease or Equipment.

   b. **Risk of Loss; Casualty Losses**. You shall bear all risk of loss or damage, theft, loss or destruction to the Equipment. You will immediately notify us in writing if any casualty event occurs causing damage, loss, or theft to the Equipment (a "Casualty Loss") and no such Casualty Loss shall relieve you of your obligations under the Lease. In the event of a Casualty Loss, you shall either, at our option: (a) place such Equipment in good repair, condition, and working order, (b) replace such Equipment with like kind equipment, in good repair, condition, working order, free of all liens and encumbrances; provided, you will obtain our prior written consent for any Equipment replacement and provide all documents and requirements we deem necessary; or (c) you will pay to us: (i) the total of all Rent Payment(s) and any other amounts due but unpaid as of the earlier of the date of the applicable Equipment Loss or an Event of Default, plus (ii) the present value of all future Rent Payments and other amounts to be paid over the remaining term of the Lease, discounted at the implicit rate of the Lease, plus (iii) the amount of any purchase option or the Equipment's anticipated residual value amount at the end of the Lease term (assuming no loss or damage) discounted at the implicit rate.

   c. **Disclaimer of Warranties**. You selected the Equipment and related vendor, based on your own judgment and without reliance on any statements by us and we are not responsible for service or repairs to the Equipment. If you entered into any purchase or supply agreement with the manufacturer, vendor or distributor, you assign to us your rights, but not your obligations, under such agreement(s) and other than this Lease, we are not a party to or bound by the terms of any purchase order or other agreement regarding the Equipment. YOU ARE ACQUIRING THE EQUIPMENT "AS IS," AND WE DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. YOU WAIVE ANY CLAIM (INCLUDING TORT LIABILITY) YOU MAY HAVE AGAINST US FOR ANY LOSS, DAMAGE (WHETHER DIRECT, INDIRECT, OR CONSEQUENTIAL) OR EXPENSE CAUSED BY THE EQUIPMENT OR THIS LEASE. Your sole remedy with respect to issues with the Equipment or breach of warranty is against the vendor or manufacturer and you have no remedy or claim against us. Provided no Event of Default exists hereunder, we assign to you any warranties provided by the manufacturer or vendor for the Equipment.

6. **RETURN OF EQUIPMENT**. Upon the expiration or cancellation of this Lease, unless you properly exercise a purchase option hereunder, you shall at your risk and expense, according to manufacturer's standards, assemble and deliver the Equipment (and all manuals, records and documents regarding its use, maintenance and repair) to a location designated by us. The Equipment shall be delivered free of any liens or obligations and in good working order, in the same condition, appearance, and functional order when leased hereunder, reasonable wear and tear excepted. At our request, at your expense, you shall provide us with written certification by an independent expert acceptable to us that the Equipment is in the condition required hereunder. Upon return of the Equipment, all upgrades and improvements shall become our property. Upon expiration of the Lease and thereafter, until we receive the Equipment at the return location, this Lease shall automatically renew from month to month, and you will continue to be obligated for the Rent Payments, subject to the same payment and other Lease terms until the Equipment is properly returned.

7. **END OF LEASE TERMS**. So long as this Lease is not cancelled or terminated, and no Event of Default has occurred or is continuing, upon expiration of the Initial Lease Term, you will have the End of Lease Term(s) stated above and/or on any Addendum hereto, subject to the terms and conditions herein.

   a. **Return Only**. If the End of Lease Term above is "Return Only", you will provide us notice of your intent to return the Equipment at least 90 days (but not more than 150 days) before the end of the Initial Lease Term and return the Equipment in compliance with this Lease. If you fail to properly give such notice or fail to return the Equipment in compliance hereunder, then this Lease will automatically renew from month to month, and you will continue to be obligated for Rent Payments to us subject to the same payment and other terms hereunder until proper notice is given and the Equipment is properly returned.

   b. **Fair Market Value Purchase Option**. If the End of Lease Term above is "Fair Market Value Purchase Option", then you may purchase all, but not less than all, of the Equipment for the fair market value of the Equipment, plus applicable taxes. Fair Market Value ("FMV") shall mean the retail, not wholesale, fair market value at the time of such exercise, which shall be determined by us in our reasonable judgment. If the parties cannot reach an agreement on the FMV after good faith negotiation, then the FMV shall be the value determined by an appraisal of the Equipment made by a qualified independent equipment appraiser certified for the Equipment, assuming the Equipment is in as good operating condition and appearance as of the Commencement Date hereunder, ordinary wear and tear excepted. The appraiser shall be selected by us and the costs of the appraisal shall be paid by you. You must provide us at least 90 days (but not more than 150 days) prior written notice before the end of the Initial Lease Term to exercise such FMV Purchase Option. Payment of the FMV Purchase Option amount must be received by us on or before the last day of the Initial Lease Term. Upon receipt of the all such amounts and applicable taxes and other outstanding Lease amounts, we shall transfer all of our right, title and interest in the Equipment to you "AS IS, WHERE IS" without any express or implied representations or warranties of any kind.

   c. **Stated Purchase Option**. If the End of Term stated above is "Stated Purchase Option", you will have the option at the end of the Initial Lease Term to purchase all of the Equipment for the Stated Purchase Option Amount, plus any applicable taxes, on an "AS IS, WHERE IS" basis. You must provide us at least 90 days (but not more than 150 days) prior written notice before the end of the Initial Lease Term to exercise such Stated Purchase Option and full payment of the Stated Purchase Option Amount and all other Lease amounts due, must be received by us on or before the last day of the Initial Lease Term. Upon receipt of all amounts due, we will transfer all right, title and interest in the Equipment to you "AS IS, WHERE IS" basis, without any express or implied representations or warranties of any kind.

   d. **Mandatory Purchase**. If the End of Term above is a "Mandatory Purchase", then this Lease is a lease intended for security and a secured transaction. We are solely financing your purchase of the Equipment. You own and hold legal title to the Equipment and any legal title we have is transferred to you on the Commencement Date on an "AS IS", "WHERE IS" basis, without any express or implied representations or warranties. You shall at all times hold good legal valid title in and to the Equipment. We are not the owner of the Equipment for any purpose provided, however, that we retain a valid, enforceable, first priority perfected security interest in the Equipment, subject to no other interest, lien or encumbrance, until all Lease obligations are satisfied. You are obligated to

purchase all the Equipment at the end of the Initial Lease Term for the above Mandatory Purchase Price to be paid on the last day of Initial Lease Term, which constitutes the anticipated or estimated residual value of the Equipment. Any failure to pay the Mandatory Purchase Price and all amounts due hereunder will be an Event of Default. While we will report any sales or use taxes from the sale of the Equipment, payment of such taxes are still your responsibility. You also are required to report and remit to all applicable taxing authorities all personal property taxes for the Equipment and maintain proof of payment and filing.

   e. **End of Term Addendum**. If the End of Term above indicates an "End of Term Addendum" then there shall be a Lease addendum that is hereby made a part of, and incorporated into, this Lease and shall govern the terms and conditions of the End of Term for this Lease.

If at the expiration of the Initial Lease Term, you do not comply with all Lease and End of Lease requirements, including properly providing required notices, properly exercising any purchase option hereunder and/or purchase all of the Equipment, then this Lease will automatically renew from month to month, and you are obligated for the Rent Payments subject to the same payment and other terms of this Lease until all requirements hereunder are met. If you fail to timely pay any purchase option amount or other amount due, we may require you immediately purchase all Equipment and pay all amounts due or require the Equipment is returned immediately.

8. **FINANCE LEASE**. This is a non-cancelable lease contract, we are the owner of the Equipment and hold title at all times unless otherwise expressly stated herein. If Article 2A pursuant to the Uniform Commercial Code in the state of Illinois (the "**UCC**") applies to this Lease, it will be considered a "finance lease" thereunder. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ALL RIGHTS AND REMEDIES OF A LESSEE UNDER ARTICLE 2A. If this Lease is held not to be a true lease under the UCC, but rather a lease intended for security and secured transaction, then you hereby grant us valid, enforceable, first priority security interest in the Equipment to secure payment and performance of all your obligations under this Lease and under all other obligations or indebtedness of any kind, at any time owing by you to us (herein the "Obligations"). If the Lease is a lease intended for security and secured transaction, we shall have all the rights and remedies of a secured party under the UCC. You hereby give us a limited power of attorney and authorize us to file any UCC financing statements or other documents we deem necessary to protect our interests in the Equipment and Lease. This limited power of attorney and our first-priority perfected security interest are irrevocable for the term of this Lease.

9. **INSURANCE**. You agree to keep the Equipment fully insured until all your Lease obligations are fully satisfied, including: (a) general property damage insurance covering the Equipment for its full replacement value, which shall be equal or greater than the Total Equipment Cost, with us and our successors and assigns named as loss payee; (b) general liability insurance or other similar third party liability coverage in an amount determined by us with us and our successors and assigns named as additional insured; and (c) any other insurance we may require. All such insurance shall be in amounts, and with insurers, reasonably acceptable to us and we will be provided thirty (30) days prior written notice of any material policy alteration or cancellation. You will provide certificate(s) of insurance or other sufficient evidence as we reasonably request, or we may, but are not obligated to, obtain insurance to protect our interests in the Equipment, at your expense. This insurance may, but is not required to, protect your interests and the cost of this insurance may be more than your own insurance. In addition to the insurance premiums, we may charge interest and/or administrative related fee(s), with such costs added to your obligations hereunder. Nothing hereunder shall create any type of insurance relationship between us and you. You provide us a limited power of attorney to make claims for, receive payment of, and endorse all documents, checks or other drafts for loss, theft, or damage to the Equipment and you will cooperate with us and/or insurance agents for procuring insurance and processing claims.

10. **INDEMNIFICATION**. You as Lessee shall provide the following indemnities to us as Lessor and such indemnities shall survive any expiration or termination of this Lease.

   a. **General Indemnification**. You as Lessee agree to indemnify, hold harmless and, upon request, defend us as Lessor, and our directors, officers, agents and affiliates, against all claims, directly or indirectly arising out of, or connected with, the Equipment or this Lease. "Claims" means all losses, liabilities, damages, penalties, expenses, claims or actions, arising out of or relating to your ownership, possession, operation (regardless of where, how, or by whom the Equipment is operated), control, use, condition (including latent and other defects, whether or not discoverable), maintenance, and delivery of the Equipment, any claim for intellectual property infringement, or if you are in default, arising out of the condition of the Equipment sold or disposed of after your use. These indemnities and obligations survive and continue in full force and effect notwithstanding termination of this Lease.

   b. **Tax Indemnification**. If this Lease is a true lease for federal and state taxes and we have a loss of, or right to claim or recapture, any part of the federal or state income tax benefits we anticipated entering this Lease and owning the Equipment thereunder (a "Tax Loss"), then you will indemnify us as follows. If for any reason this Lease is not considered a true lease for income tax purposes, or if for any reason we are not entitled to depreciate the Equipment for tax purposes as anticipated upon executing the Lease, and we suffer a Tax Loss, you will pay as an indemnity and additional Rent Payment(s), an amount which will, after using the same lease pricing, structure and tax assumptions, benefits and payments, maintain our original Lease net after-tax rate of return had no such Tax Loss occurred. If any change in the federal or state tax laws occurs (or interpretation thereof) as to the tax treatment of this Lease, the Equipment or the Lease tax rates, resulting in a Tax Loss, we will modify the implicit rate of the Lease to receive the same net after-tax rate of return and the Lease will be automatically amended accordingly. We will notify you of any such indemnity with a demand for payment detailing the Tax Loss and you will pay the indemnity to us on the next Rent Payment Date immediately following such demand. For such tax indemnities, we as "Lessor" includes any affiliate with which we file consolidated income tax returns.

11. **ASSIGNMENT**. You may not assign or transfer this Lease and you may not sell, lease, or pledge the Equipment, or any interest therein, to anyone under any circumstances. We may sell, assign, grant a security interest in, or otherwise transfer, any of our interests in this Lease or the Equipment without notice to, or consent by, you. The assignee has all rights we assign to them, but none of our obligations, which we shall retain. The rights of the assignee will not be subject to any claims, defenses or set-offs you have against us. Upon any such assignment by us, you will acknowledge the assignment comply with all remaining Lease obligations and requirements of the assignee. This Lease shall inure to the benefit of, and is binding upon, the successors or permitted assigns of the parties hereto.

12. **EVENTS OF DEFAULT**. An event of default hereunder (each, an "**Event of Default**") by you as Lessee shall exist if any of the following occur: (a) failure by you to pay any amount due hereunder within ten (10) days of when due; (b) the failure by you to perform any covenant or obligation hereunder within thirty (30) days of notice by us; (c) failure by you to perform any covenant or Obligation under any other Obligation with us or any lease, financing, or other indebtedness with any other lender (which is not cured in any applicable cure period); (d) you or any Guarantor files, or has filed, a petition for bankruptcy under any federal or state bankruptcy or similar law, becomes insolvent, makes an assignment for the benefit of creditors or has a liquidator or receiver appointed with or without consent; (e) you or any Guarantor cease doing business, are liquidated or dissolved, or if an individual, dies; (f) a material adverse change in your or any Guarantor's financial condition, business, or assets has, in our sole discretion, occurred, or we deem the Lease or Equipment insecure for any reason; (g) for this Lease or any Obligation, a material breach occurs by you, or any representation or warranty you make to us is false or misleading; (h) any judgment against you in excess of $25,000 exists; (i) any lien or encumbrance against, or the making of any levy, seizure or attachment or other legal process on, the Equipment; (j) failure for us to have a perfected first priority security interest in the Equipment; (k) if a legal entity, you or any Guarantor have: (i) a change in control resulting in fifty percent (50%) or more of the ownership or interests held by different party(s) than had control when this Lease commenced; (ii) a merger or consolidation with any other legal entity, or (iii) a sale of all or substantially all of your or any Guarantor's assets or business; or (l) any default shall occur under any guaranty of this Lease or by any guarantor thereto.

13. **REMEDIES**. Upon any Event of Default or thereafter, we may exercise any remedies hereunder, under other agreements, in law or equity, or as applicable as a secured party under the UCC. All remedies are not exclusive, and may be elected separately or concurrently and including, but not limited to: (a) cancellation or termination of this Lease; (b) acceleration of this Lease and each Obligation(s) to be immediately due and payable by you paying: (i) the total of all Rent

Payment(s) and other amounts due but unpaid as of the date of the applicable Event of Default, plus (ii) the present value of all future Rent Payments and other amounts due for the remaining Lease term, discounted at the implicit rate of the Lease, plus (iii) the amount of any purchase option or the amount of our anticipated residual value of the Equipment at the end of the Lease term (assuming no loss or damage), discounted at the implicit rate; (c) without notice to, or consent by you, and with or without legal process, we may enter your premises and take possession of the Equipment; (d) require you return the Equipment to us, to our designated location, at your expense; (e) in addition to all other Lease amounts due, we may charge you enforcement costs (including attorneys' fees) and interest on all amounts due from the Event of Default date, at an interest rate of eighteen (18%) percent per annum (calculated at 1.5% per month on any unpaid balance due), or the maximum rate permitted by law; or (f) we may sell or dispose of the Equipment in compliance with the UCC and other applicable laws. Any sale proceeds shall be: (i) applied to your Obligations, and (ii) if under the UCC, this Lease is a true lease, then any excess proceeds will be retained by us and if this Lease is a lease intended for security, such excess proceeds will be paid to you. No delay or omission by us to exercise any right or remedy impairs or waives such right or remedy. We may release any obligor, guarantor, or Equipment for this Lease without notice to, or consent by you, and it does not relieve any of your Obligations. We may, but are not required to, perform certain of your Lease obligations, such as paying taxes, insurance or for maintenance for the Equipment; provided, you are obligated to promptly reimburse us, and no obligation hereunder is relieved. No waiver by us of any default operates as a waiver of any other present or future default.

14. **LESSEE REPRESENTATIONS, WARRANTIES AND COVENANTS.** As of the date hereof and during the Initial Lease Term, and any renewal term thereto, you represent, warrant and covenant to us that: (a) this Lease constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms (b) you are able to perform all of your obligations hereunder; (c) you are not in violation of any law, contract or organizational documents by entering into and performing your Obligations; (d) all financial or other statements you have made are true and correct and you are not insolvent; and (e) no consent, approval or giving of notice to any party is required to perform your Obligations; (f) any person signing this Lease is duly authorized; (g) if a legal entity, your legal entity is as stated above and is duly organized, validly existing and in good standing under the laws of the state above and is duly qualified, in good standing, and authorized to do business where the Equipment is located; (h) your legal name is as stated above, and if an individual, such name is as stated on your valid and unexpired state driver's license, or alternative identification issued by your primary state of residence, and if a legal entity, such legal name is as stated on your organizational documents; (i) you will provide at least thirty (30) days prior written notice if you change your name, legal entity or principal place of business; (j) you authorize us to obtain and use credit bureau reports and other similar inquiries we deem necessary, whether obtained directly by us or indirectly through other lenders or vendors assisting with your financing and purchase of Equipment; (k) you will provide any further credit, financial or business information we require, including current interim or annual financial statements; (l) you irrevocably authorize and direct us to pay all vendors required for the Equipment and other costs under this Lease; (m) you are, and will remain, in full compliance with all applicable laws, including that: (i) no person who owns a controlling interest in or otherwise controls you or any Guarantor is, or shall be, (A) listed on the "Specially Designated Nationals and Blocked Person List" maintained by the Office of Foreign Assets Control ("OFAC") Department of Treasury or any similar lists maintained by agencies under statute, regulation, order or other authority, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), or any related authority; and (ii) all applicable Bank Secrecy Act laws for the prevention and detection of money laundering violations.

15. **MISCELLANEOUS.**

    a. **Entire Agreement; Amendments; Counterparts; Chattel Paper; Enforceability.** This Lease constitutes the entire agreement for the subject matter hereunder and supersedes all prior oral and written agreements. No modification or amendment of this Lease shall be binding unless executed in writing by both parties. This Lease may be executed in one or more counterparts, each of which is an original and together constitutes one Lease. The original Lease shall constitute the original chattel paper under the UCC. If any term hereunder is determined by a court, agency or other authority to be invalid or unenforceable, such finding shall not affect any remaining terms of this Lease.

    b. **Notices; Electronic Documents.** All notices hereunder must be sent by certified mail or recognized overnight delivery service, postage prepaid, return receipt requested to you at the address stated above or an alternative address provided in writing. This Lease, any signature page or counterpart thereto, signed and transmitted by facsimile machine, telecopier or other electronic means (including via transmittal of a "pdf" file) shall be deemed an original document that is valid, binding and enforceable. The signature of any person thereto shall be considered an original signature and the document transmitted has the same binding effect as an original signature on an original document. At our request, any facsimile, telecopy or other electronic document shall be provided with a "wet ink" signature and/or manually transmitted in original form by the person(s) who executed the facsimile, telecopy or other electronic document. The parties hereby consent to using such electronic signature(s) and/or electronic transmission of document(s) and intend to be legally bound thereby. No party may raise use of a facsimile, telecopier or other electronic means of delivery, or the fact any signature is electronic, as a defense to enforcement of this Lease.

    c. **Further Assurances; USA Patriot Act.** You will promptly execute and deliver any further documents and take further action as we may request to fulfill the purpose of this Lease. We hereby provide notice that pursuant to the USA PATRIOT Act (Title III of Pub. L. 107-56, October, 26 2001), we are required to obtain, verify and record information identifying you and any guarantor(s), including names, addresses and information to comply with this law. You and any Guarantor(s) agree to promptly provide documentation complying with obligations under anti-money laundering laws, "know your customer" requirements and the Act.

    d. **Governing Law; Jurisdiction/Venue; Jury Trial Waiver.** This Lease shall be subject to, and governed by, the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each party consents to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes for this Lease and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. **EACH PARTY IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LEASE OR THE TRANSACTIONS CONTEMPLATED HEREBY. NO PARTY HEREUNDER SHALL BE LIABLE FOR SPECIAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES ARISING OUT OF THIS LEASE.**

| LESSOR | | LESSEE | |
|---|---|---|---|
| | Midland States Bank | | Name: Bridger Steel, Inc. |
| | Print Name: | | Print Name: Bruce Knudsen |
| | Title: | | Title: CEO |
| | Authorized Signature: X | | Authorized Signature: X  /s/ |

# EXHIBIT A

**Midland Equipment Finance**
A division of Midland States Bank

Agreement Type: $1 Buyout
Agreement No. 827-226263-001
Dated: September 10, 2019

This EXHIBIT A dated as of September 10, 2019 supplements the above referenced agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor under such Contract) and Obligor (as debtor, lessee or obligor under such Contract).

| Equipment Description | Equipment Location |
|---|---|
| One (1) New RAS XXL-Center Metal Folding System | 605 E Willow St<br>Brandon, SD 57005 |
| One (1) Used 2015 Freightliner Coronado 122 SD  VIN: 3AKJGNDV2FDGK9953 | 2110 Overland Ave, Ste 121<br>Billings, MT 59102 |

IN WITNESS WHEREOF, the parties hereto have caused this Exhibit A to be duly executed as of the date first set forth above by their authorized representatives.

| CREDITOR | OBLIGOR |
|---|---|
| Midland States Bank | Bridger Steel, Inc. |
| Print Name: | Print Name: Bruce Knudsen |
| Title: | Title: CEO |
| Authorized Signature: X | Authorized Signature: X *(signed)* |

**EARLY COMMENCEMENT OF LEASE AND EQUIPMENT ACCEPTANCE ADDENDUM**



Lease Agreement No.   827-226263-001
Dated:                September 10, 2019

| LESSOR: Midland States Bank | LESSEE: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Phone: 4063889555 |

This Early Commencement of Lease and Equipment Acceptance Addendum (the "Addendum") to Lease No. 827-226263-001 (the "Lease") is made as of September 10, 2019, by and between Lessor and Lessee, the terms of which are incorporated herein, and the terms of the Lease and this Addendum together shall constitute a separate instrument of lease. All capitalized terms used herein which are defined in the Lease shall have the same meaning herein, and if any terms hereof are inconsistent with the terms of the Lease, the terms hereof shall prevail.

BACKGROUND. Lessee has ordered from RAS Systems, LLC and Budget Truck Sales, LLC ("Vendor") the Equipment described in and to be leased from Lessor to Lessee under the Lease. The Equipment has a total cost of $446,364.00 (the "Total Cost") of which a balance of $446,364.00 remains due and owing to Vendor on account of the Total Cost (the "Balance").

Lessee has requested that Lessor purchase the Equipment on Lessee's behalf from Vendor and lease the Equipment to Lessee pursuant to the Lease, and in connection therewith, Lessee has requested that Lessor pay the Balance to Vendor. Lessor's standard practice is to pay a vendor the purchase price of such equipment when final delivery of the equipment to Lessee occurs, at which time the lease commences and Lessee is unconditionally obligated under the Lease. However for purposes of this Lease, Lessee has requested that, as an accommodation to Lessee and to Vendor, Lessor vary its standard practice and: (a) pay the Balance to Vendor prior to and notwithstanding that the Equipment has not been delivered, installed, and fully operational by Lessee, and (b) to commence the Lease.

Lessor has agreed to pay the Balance and to commence the Lease, subject to the terms and conditions set forth in this Addendum.

NOW, THEREFORE, the parties hereto agree as follows:

1. Prior to and as a condition to Lessor paying the Balance to Vendor or otherwise, Lessee will cause Vendor to deliver an invoice in Lessor's favor, covering all of the Equipment, and otherwise in form and substance satisfactory to Lessor and if any amounts were previously paid to Vendor on account of the Total Cost, the invoice shall set forth the amounts and dates upon which such amounts were paid (the "Invoice"). Upon receipt by Lessor of the Invoice and satisfaction of such additional conditions as Lessor shall require, Lessor will pay the Balance to Vendor in accordance with the Invoice (or such other document satisfactory to Lessor).

2. Upon payment of any portion of the Balance to Vendor and notwithstanding anything to the contrary contained in the Lease or otherwise, as between Lessee and Lessor: (a) all of the Equipment shall be deemed to have been delivered, installed and unconditionally accepted by Lessee for all purposes of the Lease, (b) notwithstanding any terms to the contrary in the Lease, the Lease will immediately commence as of and on the date any portion of the Balance is disbursed to the Vendor such that the "Commencement Date" or "Rent Commencement Date" for the Lease will be the date any portion of the Balance is disbursed to the Vendor, and the Lease will end upon the expiration of the number of months or payment periods (whichever applicable) specified in the Lease from Commencement Date, (c) notwithstanding any terms to the contrary in the Lease, the first lease rental payment is due on the due date as set forth in the Lease and each remaining periodic lease rental payment shall be due on the same day of each payment period thereafter for the initial term of the Lease; and (d) Lessee shall be obligated to perform and satisfy all of Lessee's obligations and duties under the Lease (including, without limitation, the obligation to make monthly Rent or other payments in accordance with the terms thereof), all notwithstanding the fact that some or all of the Equipment has not been delivered, installed or is not presently fully operational as of the date of this Addendum. **Lessee's obligations under the Lease shall be and remain ABSOLUTE AND UNCONDITIONAL, and are in full force and effect notwithstanding that some or all of the Equipment may never be delivered, installed, or fully operational.** As a condition to Lessor paying Vendor the Balance, or any portion thereof, Lessor is relying upon this Addendum, and Lessee's obligations and responsibilities thereto and pursuant to the Lease, and upon payment of such Balance, or any portion thereof, Lessor will have fully and satisfactorily performed all of its obligations under the Lease. Lessee agrees that upon such payment of such Balance, or any portion thereof, to Vendor, Lessee will not have any defenses, set-offs, or counterclaims to such obligations of Lessor.

3. Upon the actual delivery, installation, and operation of the Equipment by Lessee, Lessee shall execute and deliver to Lessor, a duly completed and signed Equipment Delivery Final Confirmation and Acknowledgement; provided, however that failure of Lessee to execute and/or deliver such document to Lessor shall not in any manner affect or alter this Addendum or Lessee's agreement or obligations hereunder. LESSEE HEREBY UNCONDITIONALLY ACCEPTS THE EQUIPMENT "AS-IS-WHERE-IS" AS OF THE DATE OF THIS ADDENDUM STATED ABOVE, WHETHER OR NOT THE EQUIPMENT HAS BEEN DELIVERED, INSPECTED, OR IS FULLY OPERATIONAL. LESSEE ACCEPTS FULL RESPONSIBILITY HEREUNDER FOR THE DELIVERY, INSTALLATION, AND OPERATIONAL REQUIREMENTS OF THE EQUIPMENT AND LESSEE WAIVES ANY RIGHTS OR DEFENSES RELATED THERETO, WHETHER PURSUANT TO THE UNIFORM COMMERCIAL CODE OR OTHERWISE. LESSEE AFFIRMATIVELY WAIVES ANY RIGHT TO DELIVERY, INSEPCTION, OPERATION, OR PERFORMANCE OF THE EQUIMENT AS CONDITIONS(S) PRECEDENT TO THE COMMENCEMENT OF LESSEE'S OBLIGATIONS UNDER THE LEASE OR THIS ADDENDUM. LESSEE HEREBY AGREES THAT LESSOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR PURPOSE.

4. Lessee hereby agrees that if the Equipment is not delivered or properly installed or does not become operational, or does not operate as represented or warranted by Vendor, or is not compatible, is not properly maintained, or is unsatisfactory for any reason whatsoever, or if any or all of the services (if any) to be performed by Vendor are not performed, or are not adequate or are not acceptable to Lessee, then in any or all such events, Lessee will make any claim on account thereof solely against Vendor and shall nevertheless perform all of its obligations and duties under the Lease and this Addendum, including without limitation the obligation to pay all Rent in full.

5. Lessee further understands and agrees that neither Vendor nor any salesman or other agent of Vendor's is an agent of Lessor and that no salesman or agent of Vendor is authorized to waive or alter any term or condition of the Lease or this Addendum and that no representation by Vendor or its salesmen or agents, as to any Equipment or any services or any other matter, shall in any way affect Lessee's obligations to pay the Rent and perform Lessee's other obligations as set forth in the Lease.

6. Without limitation of any of the above, Lessee further understands and agrees that it is assuming all risks with respect to all Equipment, all services (if any) to be performed by Vendor or other third party, and also with respect to the circumstances of these matters, including, without limitation the selection of Vendor and the Equipment, its pricing, and the representations and warranties made by Vendor with respect to the Equipment.

7. This will further confirm Lessee's understanding and agreement that its obligations under the Lease and this Addendum, including without limitation, the obligation to pay all Rent payments thereunder and hereunder, shall be absolute, unconditional and not subject to offset or defense of any kind against Lessor.

8. It is understood that Lessor is relying upon Lessee's agreements set forth above, and that the rights conferred upon Lessor hereunder are in addition to, and not in limitation of, Lessor's rights and remedies under the Lease, all of which are and shall remain in full force and effect, including, without limitation, all maintenance and insurance provisions and the cautionary grant by Lessee to Lessor of a security interest in the Equipment. Lessor is hereby authorized to file any UCC financing statements or other related documents to protect Lessor's security interest in the Lease and related Equipment.

9. Lessee shall promptly pay or reimburse Lessor for all fees, costs and expenses (including without limitation, legal fees and disbursements) incurred by Lessor in connection with this Addendum, including, without limitation, the enforcement of the terms hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed as of the date set forth above by their authorized representatives.

| LESSOR | | LESSEE | |
|---|---|---|---|
| | Midland States Bank | | Name: Bridger Steel, Inc. |
| | Print Name: | | Print Name: Bruce Knudsen |
| | Title: | | Title: CEO |
| | Authorized Signature: X | | Authorized Signature: X  *(signed)* |

# PAY PROCEEDS DISBURSEMENT AUTHORIZATION



**Agreement Type:** $1 Buyout
**Agreement No.** 827-226263-001
**Agreement Dated:** September 10, 2019

| CREDITOR: Midland States Bank | OBLIGOR: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Phone: 4063889555 |

This **Pay Proceeds Disbursement** is made effective as of the date executed by Obligor pursuant to the above-referenced agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor under such Contract) and Obligor (as debtor, lessee or obligor under such Contract).

Obligor hereby irrevocably authorizes and directs Creditor to disburse, on behalf of Obligor, for Obligor's benefit, the following amounts and/or proceeds below pursuant to the Contract, for the Equipment, Collateral or related services or requirements, to the following payee(s) below. Obligor shall indemnify, defend and hold harmless Creditor from and against any and all losses, costs, expenses, claims, damages, or liabilities, relating to or arising from Creditor's disbursement(s) and actions related thereto hereunder. Each such disbursement hereunder is made in accordance with, and subject to, the terms and conditions of the Contract.

| Payee | Amount |
|---|---|
| RAS Systems, LLC – Prior to Ship with Commencement of Contract | $379,575.00 |
| Budget Truck Sales, LLC – Prior to Ship with Commencement of Contract | $66,789.00 |
|  |  |
|  |  |
|  |  |
| **Total:** | $446,364.00 |

Obligor hereby causes this Pay Proceeds Disbursement Authorization to be duly executed as of the date below by its authorized representatives.

Dated as of September 11, 2019.

Agreed to and accepted by Obligor:

By: Bruce Knudsen
Its: CEO
Signature: *[signature]*

PayProceedsDisbursementAuthorization_082018



**EQUIPMENT DELIVERY FINAL CONFIRMATION AND ACKNOWLEDGMENT**

Lease Agreement No.   827-226263-001
Dated:   September 10, 2019

| LESSOR: Midland States Bank | LESSEE: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Phone: 4063889555 |

Lease No. 827-226263-001 dated September 10, 2019 (the "Lease") by and between the undersigned Lessee and Midland States Bank as Lessor, and any amendments or addenda thereto

Pursuant to the Lease, and the Early Commencement of Lease and Equipment Acceptance Addendum thereto, this Equipment Delivery Final Confirmation and Acknowledgement hereby acknowledges and confirms that all of the Equipment described below, which you have leased under the above referenced Lease, has been delivered to you and any necessary installation or customization of the Equipment has been fully and satisfactorily performed and the Equipment is fully operational.

See the attached Exhibit A together with all substitutions, replacements, parts, accessories, supplies, improvements, additions, attachments and accessions now or hereafter attached thereto or used in connection therewith (the "Equipment").

Lessee hereby agrees, acknowledges and confirms for purposes of the Lease that as of the date below, all Equipment has been delivered to Lessee, such Equipment has been received by Lessee, any necessary installation or customization of the Equipment has been fully and satisfactorily performed and the Equipment is fully operational.

Dated: _September_ 2019

**PLEASE DO NOT SIGN THIS DOCUMENT UNTIL AFTER ALL EQUIPMENT HAS BEEN DELIVERED.**

| After signing and dating, return to: | LESSEE | Name: Bridger Steel, Inc. |
|---|---|---|
| **Midland States Bank** 7700 Bonhomme Avenue, Suite 300 Clayton, MO 63105 Contact: Documentation Department | | Print Name: Bruce Knudsen |
| | | Title: CEO |
| | | Authorized Signature: X _[signed]_ |

# CERTIFICATE OF AUTHORITY AND INCUMBENCY
(Corporation, Limited Liability Company, Partnership)



| CREDITOR: Midland States Bank | OBLIGOR: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Type of Organization: S Corp |
| | State of Organization: MT |

1. If Obligor is a corporation, then the undersigned ("Undersigned") is a corporate secretary or assistant secretary of such corporation as executed below. If Obligor is a limited liability company ("LLC") that is member-managed, then the undersigned is a member of such LLC or if Obligor is an LLC that is manager-managed, then the undersigned is a manager of such LLC as executed below. If Obligor is a partnership, then the undersigned is a general partner of such partnership as executed below.

2. The Undersigned hereby certifies to Creditor that he/she is duly elected, qualified and serving in the office provided in Section 1 hereof, maintains the corporate and business records of Obligor and is duly authorized to execute and deliver this Certificate. If the Company is an LLC, it is not scheduled to terminate its existence within ten (10) years from the date of this Certificate of Authority and Incumbency.

3. Pursuant to Obligor's governing corporate documents, as amended from time to time ("Corporate Documents"), each of the following person(s) are (each an "Authorized Person" and collectively "Authorized Persons") and are (i) duly elected or appointed and qualified Authorized Person(s) of Obligor in the below stated office(s) and position(s); and (ii) authorized to execute and deliver for Obligor with genuine signature, all Transaction Documents (as defined below):

| Name | Title/Position | Signature |
|---|---|---|
| Bruce Knudsen | CEO | /s/ |

4. The Board of Directors, Member(s), Partners or other governing body of Obligor and required laws have duly authorized Obligor to enter into, deliver and ensure performance of certain financing arrangements, including but not limited to leases, loans, and other credit agreements with Creditor ("Transaction(s)"), documented with any of the following agreements: leases, loan agreements, finance agreements, promissory notes, security agreements, and related documents (each a "Transaction Document" and collectively "Transaction Documents") for certain amounts and on specific terms as required by Creditor. Obligor grants to Creditor a security interest and lien in its assets as required to secure the Transaction(s) and Transaction Document(s). Each Authorized Person agrees to approve on behalf of Obligor all Transaction Document(s) and perform other actions required by Creditor or the Authorized Person.

Creditor shall rely on this Certificate of Authority and Incumbency and each Authorized Person until Obligor provides written notice to Creditor rescinding this Certificate of Authority and Incumbency, which shall not affect any agreement hereunder prior to Creditor's receipt of such notice. This Certificate of Authority and all representations, warranties and covenants hereunder, shall be effective as of the effective date of the primary lease, loan, equipment finance or installment payment agreement Transaction Document related to the Transaction(s) hereunder, even if the undersigned executes this Certificate of Authority on a date that is prior, subsequent to, on or about the effective date of such Transaction Document.

IN WITNESS WHEREOF, the undersigned executes this Certificate of Authority and Incumbency as of September 11, 2019

By: /s/

Name: Brian Chouinard

Title: Secretary

    If corporation: signature of Secretary or Assistant Secretary
    If LLC Member Managed: signature of Member
    If LLC Manager Managed: signature of Manager
    If Partnership: signature of General Partner

# REQUIRED INFORMATION ADDENDUM



**Agreement Type:** $1 Buyout
**Agreement No.** 827-226263-001
**Agreement Dated:** September 10, 2019

| CREDITOR: Midland States Bank | DEBTOR: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT, 59714 |
| Phone: 800.648.6517 | Phone: 4063889555 |
| | Email: brian.chouinard@bridgersteel.com |

This Required Information Addendum (the "Addendum") is made effective as of September 10, 2019, to amend and further supplement the above-referenced agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor under such Contract) and Obligor (as debtor, lessee or obligor under such Contract). All terms and conditions of the Contract shall remain in full force and effect, unless modified by this Addendum, and all capitalized terms used not defined herein, shall have the meaning(s) assigned in the Contract.

***PLEASE COMPLETE ALL SECTIONS BELOW***

**Equipment Description:** See the attached Exhibit A

**Equipment Location:** (if different than location(s) listed on attached Exhibit A):

Street _____ City / State / Zip Code _____ County _____

**Billing Address:** (if different than address provided above):

Street _____ City / State / Zip Code _____ County _____

**Verbal Verification Authorization:**
If I am not available to verify the delivery and acceptance of the Equipment, I authorize the following person(s) to do so on my behalf:

Print Name _Brian Chouinard_  Title _Controller_

**Tax:**
Sales/Use Tax: (as applicable for Lease contracts)

__X__ Subject to Sales and Use Tax. (Tax based on the state where the Equipment is located).

_____ Exempt from sales and use tax, for the following reason: _____

Note: If you are exempt from sales tax, you MUST provide an exemption certificate or you will automatically be charged sales tax.

**Property Tax:**
The Equipment subject to the Contract may be located in jurisdiction(s) that impose a personal property tax. Please refer to your specific Contract to determine any obligations you may have to pay tax and/or file tax returns for personal property taxes in certain applicable tax jurisdictions

**Contract and Credit Application Additional Disclosures:**
1. Credit Applications. Creditor has, or may have, credit application(s) directly by and between Creditor and Obligor, for which all such terms and conditions are incorporated into the Contract, this Addendum, and any other request for, or extension of, credit to Obligor by Creditor. For any credit application originated by any lender or similar party other than Creditor (herein "Other Lender"), that is used by Creditor with respect to a potential extension of credit to Obligor, whether for this Contract or any other financing transaction, Creditor is entitled to: (i) receive access to, and disclosure and use of, any and all information relating to Obligor, a guarantor or other obligor, including any information on the credit application and credit bureau reports; (ii) Creditor shall be entitled to all the rights of the Other Lender under such credit application, whether or not a stated assignee or designee; provided, however that Creditor shall not have any of the obligations of the Other Lender thereunder; and (iii) should any term of such credit application directly or indirectly conflict with the term(s) of the Contract or any other financing transaction document by and between Creditor and Obligor, the terms of the Contract or other financing transaction documentation shall govern.
2. Contract, Credit and Financial Information. In addition to Creditor making any legally permitted disclosures to its attorneys, accountants, governing regulatory agencies, or any court or governmental agency, Obligor agrees Creditor may disclose any financial, credit, or other similar information of Obligor, including a copy of the Contract and any related documentation to: (i) Creditor's equipment vendors, suppliers, dealers, and manufacturers; and (ii) any affiliates, prospective assignees, assignees, potential investors or investors of Creditor.
3. Customer and Obligor Verification. In order to help the government fight the funding of terrorism and money laundering activities, Creditor is required by Federal law to obtain, verify, and record information identifying each customer and guarantor. For each customer and guarantor, Creditor is required to collect information such as name, date of birth, permanent physical address (no mail receiving or incorporation services), and identification number. You and each guarantor may also need to present a copy of your or their driver's license or other identifying documents.

Agreed to and Accepted Obligor:   Signature: _/s/_   Signor Name and Title: Bruce Knudsen, CEO

INSURANCE AUTHORIZATION

**Midland**
Equipment Finance
A division of Midland States Bank

Agreement No. 827-226263-001
Dated: September 10, 2019

To: Bridger Steel, Inc.
1558 Amsterdam Road
Belgrade, MT 59714

From: Midland States Bank ("Creditor")
7700 Bonhomme Avenue, Suite 300
Clayton, MO 63105

**TO THE CUSTOMER:** In connection with one or more financing arrangements, Creditor requires proof in the form of an Insurance Certificate that its insurable interest in the financed property (the "Property") meets Creditor's requirements as follows:

1. Creditor and its successor and assigns shall be covered as Loss Payee with regard to all equipment financed or leased by Policy Holder through or from Creditor.
2. Customer must carry property insurance (or, for vehicles, Physical Damage Insurance) in an amount no less than the $446,364.00.
3. The Deductible must be listed on the Insurance certificate not exceeding $10,000.00.

Please execute below and return this form to Creditor with your document package. Creditor will fax this form to your insurance agent for verification and certificates of insurance. By signing, Customer authorizes the Agent named below to endorse the policy and subsequent renewals to reflect the required coverage as outlined above.

| Agency: | | Company: | Bridger Steel, Inc. |
|---|---|---|---|
| Agent: | | | |
| Address: | | | |
| City/State/ZIP: | | By: | *(signature)* |
| Phone: | | Name: | Bruce Knudsen |
| Fax: | | Title: | CEO |
| E-Mail: | | | |

Total Invoice Amount: $446,364.00

**Equipment Description:**

One (1) New RAS XXL-Center Metal Folding System
One (1) Used 2015 Freightliner Coronado 122 SD  VIN: 3AKJGNDV2FDGK9953
together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the forgoing, including, without limitations, insurance recoveries ("Equipment").

If you do not have an insurance policy that meets the requirements above, you can contact Great American Insurance Group for an easy quotation and enrollment.

**Great American Insurance Group**
Phone: 877-878-0380
Email: agentdesk@gaig.com

# POWER OF ATTORNEY (VEHICLES)
Agreement No. 827-226263-001

| AGENT | | GRANTOR | |
|---|---|---|---|
| | Midland States Bank | | Bridger Steel, Inc. |
| | 7700 Bonhomme Avenue, Suite 300 | | 1558 Amsterdam Road |
| | Clayton, MO 63105 | | Belgrade, MT, 59714 |
| | | | Phone: 4063889555 |
| | Printed Name of Authorized Person for Agent / Attorney in Fact: | | Contact: Bruce Knudsen |
| | Signature of Authorized Person for Agent / Attorney in Fact: | | |

Vehicle Description(s) or VIN(s):

3AKJGNDV2FDGK9953

**POWER OF ATTORNEY**    Date:  September 10, 2019

The party identified in the box above as Grantor ("Grantor"), does hereby appoint Midland States Bank ("Agent"), as stated above, as its attorney-in-fact, with full power of substitution, and hereby authorizes and empowers Agent, in the name, place and stead of Grantor, to take the following actions and to do the following things from time to time with respect to the motor vehicle(s) described above or on any schedule attached hereto (the "Vehicle"), for the purpose of enabling Agent in the name of Grantor to do any and all of the following:

1. To take any and all actions and to do any and all things necessary or desirable in all matters pertaining to the titling or registration, sale or transfer of ownership or recording of a lien (including into the name of Agent), or applying for an original or duplicate certificate of title to the Vehicle, or any other similar forms or documents in the name and stead of Grantor in connection therewith;

2. To delegate said power of attorney to any person it deems appropriate, but only for the limited purposes set forth herein; and

3. To do and perform all acts necessary to carry into effect and exercise the rights and powers granted by this Power of Attorney as fully as Grantor might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Power of Attorney shall be effective from and after the date hereof, is coupled with an interest and is irrevocable. **THIS POWER OF ATTORNEY CANNOT BE CANCELLED BY GRANTOR.** Any third party may at any and all times hereafter rely upon this document as the Agent's authority to continue to exercise the rights and powers herein granted.

Grantor executes this Power of Attorney as of the date set forth above, with the intent to be legally bound hereby.

GRANTOR: Bridger Steel, Inc.

By: *(signature)*
Name: Bruce Knudsen
Title: CEO

State of Montana
County of Yellowstone

Subscribed and sworn to before me, a Notary Public in and for said County and State, by the foregoing individual who is personally known to me, or who proved to me on the basis of satisfactory evidence to be the person who appeared before me, who, being informed of the contents hereof, as a representative of Grantor and with full authority, executed the same voluntarily for and as the act of the Grantor.

*(signature)*
Notary Public Signature

[SEAL]

TIFANI LYN HITTLE
NOTARY PUBLIC for the
State of Montana
Residing at Billings, MT
My Commission Expires
February 11, 2023

AUTOMATIC ELECTRONIC PAYMENT AUTHORIZATION



Agreement Type: $1 Buyout
Agreement No. 827-226263-001
Dated: September 10, 2019

| CREDITOR: Midland States Bank | OBLIGOR: Bridger Steel, Inc. |
|---|---|
| 7700 Bonhomme Avenue, Suite 300 | 1558 Amsterdam Road |
| Clayton, MO 63105 | Belgrade, MT 59714 |
| Phone: 800.648.6517 | Phone: 4063889555 |

This Automatic Electronic Payment Authorization (the "Authorization") is effective as of September 10, 2019, with respect to the above-referenced agreement (the "Contract"), by and between us as Creditor (as lender, creditor or lessor under such Contract) and you as Obligor (as debtor, lessee or obligor under such Contract). The words "you" and "your" mean you as Obligor and the words "we", "us" and "our" means us as Creditor. All terms and conditions of the Contract remain in full force and effect, and nothing herein modifies the Contract, unless expressly modified by this Authorization. All capitalized terms used not defined herein, shall have the meaning(s) assigned in the Contract.

You hereby authorize and request that we, together with our agents, successors and assigns, initiate electronic debit entries using the automated clearing house ("ACH") funds transfer system, ACH rules and other applicable laws, for the below account (the "Account") with the below financial institution (the "Bank") for the amounts due by you to us under the Contract, including scheduled payments, past due amounts and other amounts due such as for insurance, taxes, or other obligations under the Contract or under any other existing or future lease, loan or other similar financing agreements with us (collectively the "Contracts") or for us to make credit entries to the Account for purposes of adjusting debit entries made in error. We will generally initiate such automatic payments on the related due dates under the Contract. If a due date is on a weekend or holiday, we may initiate the automatic payment either on the last business day prior to the due date or on the first business day following the due date. If an attempted debit entry is returned for insufficient funds, or any other reason, we may assess a fee in the amount of $36.00 and may make up to two (2) additional attempts for such debit entry.

**Account and Bank Information**

PLEASE ATTACH A VOIDED CHECK

| Name of Account | Bridger Steel Operating Acct |
|---|---|
| Type of Account | Checking |
| Name of Financial Institution (Bank) | First Interstate Bank |
| Account Number | 10500 |
| Bank Transit Number | 1683 |

**Required or Optional Automatic Electronic Payments**
The automatic electronic payments hereunder are Optional. If "Required", an Event of Default under your Contract will occur if the automatic electronic payments are cancelled for any reason. The Contract and Contracts are hereby amended to add this Event of Default.

One-Time and/or Ongoing Authorization:

☐ This Authorization shall be for a one-time Electronic Payment of the following Items in the total amount of $ _____

Items
_____
_____

☒ This Authorization shall be for any present or future payments or other amounts due under the Contract or Contracts.

You represent and warrant the Account is used primarily for business and commercial purposes, and if the Account is altered in any manner, you will immediately notify us and provide new and/or modified Account information. You agree to immediately notify us of any error in any automatic payment. We may, in our sole discretion, cancel, suspend and/or resume the automatic payments at any time and require you make non-automatic payments. This Authorization does not alter, lessen or relieve your Contract obligations, including your obligations as to monthly payment amounts, due dates, payment application, late charges and/or the determination of delinquencies. This Authorization remains in full force and effect until we receive written notification from you of termination, which shall be in such time and manner as to afford us and the Bank a reasonable opportunity to act. If this Authorization is "Required" above, then the withdrawal of this Authorization without our written consent will constitute an Event of Default under the Contract and Contracts.

We will provide notification in your Contract initial welcome letter and related documentation of the specific date and timing of your recurring automatic payments and deductions from the above Account based on your Contract, which will show on your account statement as "LEASING SERVICES".

| Obligor Authorized Signature: | [signature] |
|---|---|
| Printed Name and Title (as applicable): | Bruce Knudsen, CEO |
| Date: | 9/11/19 |

ACHAuthorizationInterim_032019



BRIDGER STEEL, INC.  5001

# TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER



**Agreement No.** 827-226263-001
**Dated:** September 10, 2019

**Name and Address of Customer:**
Bridger Steel, Inc.
1558 Amsterdam Road
Belgrade, MT 59714

**Equipment Description:**   See the attached Exhibit A

The Equipment must be titled as follows:

**Lienholder Name and Address:**

Midland States Bank
7700 Bonhomme Avenue, Suite 300
Clayton, MO 63105

**Owner Name and Address:**

Bridger Steel, Inc.
1558 Amsterdam Road
Belgrade, MT 59714

PLEASE NOTE: The legal name of the Customer must be used on all title applications or documentation submitted to the State for titling purposes.

If there are multiple customer(s) as co-borrowers for the Equipment, then any certificate(s) of title must include at least one of the customer's name(s), which shall name such customer/co-borrower as Owner.

**Party Responsible for Title (check the box next to the applicable option):**

☐ Customer will personally submit title work to state for processing       ☐ Titling Agency will submit title work to state for processing

☑ Dealer or Vendor will submit title work to state for processing       ☐ Trucking Company will submit title work to state for processing

**Contact Information for Titling Party:**

Name:_____

Street Address:_____

City:_____ State:_____ Zip Code:_____

Direct Phone Number:_____ Fax Number:_____

E-mail Address:_____

PLEASE NOTE: If you are in one of the Electronic Titling States identified on the attached Exhibit "A" you are required to supply the appropriate ELT Identifier to your registration office.

By signing below, Customer hereby represents, warrants, agrees and unconditionally guarantees that Customer (1) has the absolute and unconditional right, title, and interest to transfer ownership and any lienholder interest in the above described Equipment; (2) shall title the Equipment as set forth in this Agreement; (3) is responsible for ensuring the Titling Party designated above will apply for title(s) immediately upon disbursement of funds by Midland States Bank for the above stated Contract and related Equipment, even if Customer is not directly submitting title work to the state; (4) has confirmed that the current party holding the original title(s) or Certificate(s) or Origin for the titled equipment referenced above will deliver such documents to the designated Titling Party within ten business (10) days of the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; (5) shall ensure Titling Party agrees to send a copy of the processed title application receipt as endorsed by the applicable State to the address set forth below within thirty (30) business days after the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; and (6) hereby agrees to indemnify, defend, and hold Midland States Bank harmless for any claims, losses, liabilities, costs, or expenses arising between the date of disbursement of funds by Midland States Bank for the above stated Contract and any related Equipment, and the date of full satisfaction of all obligations and agreements of Customer hereunder, which occur as a result of: (i) Customer's breach of, or delay or failure relating to, any representation, warranty, covenant, or agreement in this Agreement; or (ii) the creation or imposition of any intervening rights, interests, or liens with respect to the Equipment, including but not limited to, any liens by third parties or other creditors, mechanics liens, storage liens, or other similar liens.

Midland States Bank
Attn: Funding Department
7700 Bonhomme Avenue, Suite 300, Clayton, MO 63105

Customer: Bridger Steel, Inc.
By: _____
Name: Bruce Knudsen              Title: CEO



Agreement No.    827-226263-001
Dated:           September 10, 2019

| Electronic Titling States | ELT Identifier |
|---|---|
| Arizona | 370259550 |
| California | FUR |
| Colorado | E3702595500001 |
| Florida | 254854815 |
| Georgia | 1115911540 |
| Idaho | 37-0259550 |
| Iowa | 37025955000 |
| Louisiana | ECMH |
| Maryland | 8178 |
| North Carolina | 36470741 |
| Nebraska | 40147444 |
| Nevada | MZ0096 |
| Pennsylvania | 37025955002 |
| South Carolina | 34443476 |
| Texas | 37025955000 |
| Virginia | MSB13 |
| Massachusetts | C 42533 |
| South Dakota | 370259550 |
| Wisconsin | 129168 |
| Ohio | E10427 |
| New York | 79811 |
| Washington | MAB |