**Joseph A. Soueidi, Attorney No. 35574285**
**FELT MARTIN PC**
**2825 3RD AVE. N., SUITE 100**
**Billings, MT 59101**
**Telephone: (406) 248-7646**
**Fax: (406) 534-2002**
**Email: jsoueidi@feltmartinlaw.com**

**Counsel for PSB Credit Services, Inc.**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF MONTANA

| In re | Case No. 2:23-bk-20019-BPH |
|---|---|
| **BRIDGER STEEL, INC.,** | **PSB CREDIT SERVICES, INC.'S OBJECTION TO MOTION TO SELL PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS** |
| Debtor. | |
| | **NOTICE OF HEARING**<br>Date: June 7, 2023<br>Time: 9:00 a.m.<br>Location: Mike Mansfield Federal Courthouse<br>400 North Main Street<br>2nd Floor<br>Butte, MT 59701 |

PSB Credit Services, Inc. ("PSB"), by and through its counsel, respectfully files this objection (the "Objection") to the above captioned Debtor's *Motion to Sell Property Outside the Ordinary Course of Business* [Docket No. 43] (the "Motion") and respectfully states as follows:

**Preliminary Statement**

1. By the Motion, the Debtor is proposing a sale of approximately 17 pieces of equipment (the "Equipment") described in the Motion to some as yet unknown buyer or buyers. The

1

Debtor does not provide the fair value of the Equipment nor information which would allow an interested party, including creditors such as PSB with a security interest in the Equipment, to properly evaluate the minimum sale prices described in the Motion. In its Motion, the Debtor opines that PSB is protected from the loss of its collateral by a 47 percent equity cushion based on all remaining collateral or 22 percent based on the Debtor's assets alone, but these opinions are not founded upon any evidence included with the Motion. PSB is engaging appraisals of its collateral, but without current, objective valuation information PSB does not share Debtor's optimism concerning the value of PSB's collateral. First, the Debtor appears to include its entire roster of personal property in valuing PSB's collateral, whether tangible or intangible and whether or not feasibly subject to liquidation and debt repayment.[1] Second, developments since the Petition Date have caused PSB to doubt the Debtor's assumed values for assets subject to PSB's security interest or the utility of those asset to fund a plan of reorganization or repay PSB debt. For instance, while the Debtor does not concede that PSB has a perfected security interest in the Debtor's Employee Retention Credit ("ERC"), the value of the ERC appears to be included in the Debtor's calculation of PSB's equity cushion. At the same time, while PSB has tentatively agreed to allow the ERC to be used as collateral to obtain debtor-in-possession (DIP) financing, the Debtor has been unable to obtain DIP financing using the ERC, suggesting the ERC is of speculative or contingent value. In addition, the real property collateral of PSB referenced in Debtor's Motion and occupied by Debtor as its principal business location is being marketed for sale, but the only offer of which PSB has been made aware was $1,333,333 less than the Debtor's asking price, again demonstrating that the equity cushion Debtor asserts for PSB is speculative.

---

[1] PSB holds a blanket lien in substantially all the Debtor's assets, and in the case of some of the Equipment PSB's interest is subject to prior lessor and purchase-money lenders.

2. More importantly to PSB, the Motion does not discuss the Debtor's plans or expectations as to the future of this Chapter 11 case—what is next for the Debtor, how will the Debtor fund the case going forward without eroding secured creditors' collateral? Is a reorganization feasible or should the Debtor be seeking approval to run a sale and/or liquidation process to maximize value for all stakeholders?[2] The Motion's purview is limited to the piecemeal liquidation of the subject Equipment without a context and plan as to how this liquidation will ultimately benefit the Debtor's creditors or promote the success of the Debtor's case. Without those elements, the Debtor cannot justify to the Court the piecemeal sale of the Equipment under 11 U.S.C. § 363(b).

3. By the Motion, the Debtor seeks to take the secured creditors' collateral, particularly PSB's collateral, and expend that value to temporarily fund operations. This is a stopgap approach and, again, the Debtor has not demonstrated how the proposed sale of the Equipment serves the greater good of this case and the Debtor's stakeholders. Funding the Debtor's operations on a stopgap basis by eating away at the secured creditors' finite collateral base should not be permitted.

4. Even if the Debtor had a sound business reason for the piecemeal sale and erosion of PSB's collateral base, the Motion fails to meet the statutory requirements of section 363(f). The Motion does not address these requirements or suggest how the Debtor could meet any of those requirements. Instead, the Motion relies upon an adequate protection argument under section 363(e), again for which no valuation by the Debtor is provided in the Motion to substantiate the alleged equity cushion. Because the Bankruptcy Code prerequisites to approving a sale free and clear under section 363 have not been met, the Motion should be denied, irrespective of the Debtor's speculative equity cushion rationale.

---

[2] PSB is a 30% equity holder of the Debtor.

**Relevant Background**

5.  On February 24, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Montana, commencing the chapter 11 case. Petition, ECF 1. No trustee or examiner has been appointed in this chapter 11 case.

6.  The Debtor continues to operate its business and manage its affairs as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

7.  On March 27, 2023, the Debtor filed the Motion with the Court seeking approval to sell personal property located in Yellowstone County, Montana, free and clear of "blanket liens" pursuant to section 363(f) and to use the resulting cash collateral pursuant to section 363(c)(2). There is no procedural bidding order being sought for approval of the Court or any description of the prospective purchaser(s).

8.  The Motion does not indicate whether any of the secured creditors have consented to the Motion, and indeed PSB has not.

**Objection**

9.  The Debtor has failed to meet its burden under section 363(b) because there is no sound business purpose to continue whittling away at PSB's collateral with ad hoc sales when there is no viable reorganization in sight. A Court may authorize the sale of the Debtors' assets free and clear of a secured creditor's security interest pursuant to section 363(b) only if there is a sound business reason for the sale and, among other criteria, the Debtor meets the requirements of section 363(f). 11 U.S.C. §§ 363(b) and (f). Additional scrutiny is required when a debtor is requesting approval of a sale under section 363 motion without an accompanying plan of reorganization. *In re Air Beds, Inc.*, 92 B.R. 419, 422 (9th Cir. B.A.P. 1988, citing *In re Lionel Corp.*, 722 F. 2d 1063, 1066

(2d. Cir. 1983). Further, a sale of assets before confirmation of a plan is permissible only on the basis of demonstrated emergency in the most exigent of circumstances. *Id. citing In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781 (Bankr. W.D. Pa. 1988). In its Motion the Debtor has not sought approval of bidding procedures or an auction to ensure an open and fair public sale designed to maximize value for the estate.

10. Even if the Debtor had met its burden under section 363(b) and (f) for a sale free and clear of PSB's interests, it has not met its burden under section 363(e) to provide adequate protection of PSB's security interest in the Debtor's assets. The burden of proof on this point is spelled out in section 363(p) which provides that the trustee (*i.e.*, debtor-in-possession) has the burden to prove that a proposed sale adequately protects the party (or parties) affected by the sale. 11 U.S.C. § 363(p). The Debtor has not provided a valuation of its assets supporting the contention that PSB and other secured creditors are adequately protected. Instead, the Debtor expects certain "minimum" prices for the Equipment. This is insufficient under the Bankruptcy Code, especially with diminishing collateral occurring through the Debtor's piecemeal sales that are eroding any equity cushion that PSB may have in the Debtor's assets that comprise PSB's collateral.

11. For these reasons and others discussed herein the Debtor's Motion must be denied.

**A. The Debtor's Motion Fails to Satisfy the Requirements of Section 363(b) and Erroneously Cites to Section 363(c)(2) as Authority for the Sale of Equipment.**

12. The Debtor incorrectly cites section 363(c)(2) for the legal standard of when a debtor-in-possession can use, sell, or lease estate property. Section 363(c)(2) only applies to the use, sale, or lease of property in the ***ordinary course*** of business under section 363(c)(1). *See* 11 U.S.C. § 363(c)(1)-(2). Here, the sale of the Equipment is ***not*** in the ordinary course. The Motion is styled as a sale "outside the ordinary course of business," which Debtor describes in the Motion as the business

of "fabricat[ing] and sell[ing] metal roofing and siding products and accessories." Motion at ¶ 4. The Motion is predicated upon an inapplicable provision of the Bankruptcy Code and should be denied.

13. Assuming the Debtor meant to seek relief under section 363(b) of the Bankruptcy Code, section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). As a preliminary matter, in determining whether to approve a proposed sale under § 363(b), the Court must find from the evidence presented before him at the hearing a good business reason to grant such an application. *In re Photocopy & Supply, Inc.*, No. 94-01756, 1994 WL 553065, at *1 (Bankr. D. Idaho Sept. 13, 1994) (need sound business purposes to justify the sale); *In re Flour City Bagels, LLC,* 557 B.R. 53, 77 (Bankr. W.D.N.Y. 2016) (*quoting In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983) (court must "expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.")).[3]

14. The failure of the Debtor to seek approval of formal sale/bidding procedures weighs against approval of the Motion because without such formal guardrails, there is no certainty as to who and how the sale of the Equipment will occur. Indeed, "[t]he purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate." *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). To accomplish that goal, bankruptcy courts have discretion and latitude in approving how such sale is conducted. *See Wintz v. Am. Freightways, Inc. (In re Wintz Cos.)*, 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring a sale of assets, bankruptcy courts "have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets.") (*quoting Four B.*

---

[3] In addition to not seeking relief under the appropriate section of 363, the Debtor has not submitted any affidavit or declaration supporting the relief requested and provide a factual record for the relief requested in the Motion.

*Corp. v. Food Barn Stores (In re Food Barn Stores)*, 107 F.3d 558, 566 (8th Cir. 1997)). Without a formal process approved by the Court with guardrails for the sale of the Equipment, the Debtor cannot show that there is a sound business reason or even that the sale is a value maximizing transaction.

15. Ultimately the Debtor has not met its burden under sections 363(b) for a good business reason to sell the Equipment because no justification is given other than to fund "its ongoing operations." Motion at ¶ 20. This is an insufficient and unsupported factual statement. Nor has the Debtor met its burden to show that the proposed sale of the Equipment is value maximizing for the estate. The sale of this Equipment is proposed by the Debtor to be dissipated through use as cash collateral for "day-to-day expenses"—the Debtor's Budget shows at best speculative improvement in the Debtor's finances over the next 9 months, and one version of the Budget is entirely contingent on DIP financing which Debtor has not been able to obtain. Instead of supporting the Motion, the Debtor's Budget shows a significant gap in the funding the Debtor needs to finance this case and brings into question the feasibility of a reorganization. *See* Budget, pp. 1 and 3.

16. Because the Debtor cannot meet the requirements of section 363(b), the Motion should be denied.

**B. Even if the Debtor Satisfied Section 363(b), the Motion Fails to Meet the Requirements of Section 363(f) and Does Not Provide Any Basis Under Section 363(f) to Justify a Sale of Equipment Free and Clear of PSB's Interests.**

17. The Debtor has failed not only to satisfy section 363(b)'s sound business purpose requirement, but also the requirements under section 363(f) to sell estate property free and clear of interests. Under section 363(f), a debtor may sell property under subsection (b) or (c) of section 363:

> free and clear of any interest in such property of an entity other than the estate, ***only*** if

>    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
>    (2) such entity consents;
>
>    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
>    (4) such interest is in bona fide dispute; or
>
>    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added); *see also*, *In re PW, LLC*, 391 B.R. 25, 37 (B.A.P. 9th Cir. 2008).

18. Paragraphs (1) and (2) of section 363(f) are not applicable here because (1) the Debtor has not shown that applicable nonbankruptcy law permits the sale of such property free and clear of PSB's interest, thereby failing to meet its burden, and (2) PSB does not consent to the sale. Thus, while the Motion does not discuss any of the section 363(f) requirements, it is clear that the Debtor does not satisfy the requirements of paragraphs (1) or (2) of 363(f).

19. The Debtor's motion similarly fails to meet the requirements set forth in the remaining three paragraphs of section 363(f), and must be denied. First, paragraph (3) is not met because, in the Ninth Circuit, the property being sold must fetch a sale price greater than the aggregate amount of all claims held by secured creditors in the property. *See In re PW, LLC*, 391 B.R. at 41 (holding that "§ 363(f)(3) does not authorize the sale free and clear of a lienholder's interest if the price of the estate property is equal to or less than the aggregate amount of all claims held by creditors who hold a lien or security interest in the property being sold."); *In re Canonigo*, 276 B.R. 257 (Bankr. N.D. Cal. 2002) ("court may not authorize sale free and clear of liens under this provision, unless sale price is greater than full face amount of claims secured by liens, such that there will be some equity produced for estate."); *see also*, *In re Gen. Bearing Corp.*, 136 B.R. 361, 366 (Bankr. S.D.N.Y.1992). Thus, in any case where "the value of the property being sold is less than the total amount of claims held by

secured creditors, the total of all allowed secured claims will equal, not exceed, the sales price, and the statute requires the price to be 'greater than' the 'value of all liens.'" *Id*. Here, the aggregate sale price of $346,092 is less than the total amount of claims held by PSB, let alone all the secured creditors, and the Debtor cannot meet the Ninth Circuit's test under section 363(f)(3).

20. Second, to meet the criteria under paragraph (4) of a "bona fide dispute"[4] there must be an objective basis for either a factual or legal dispute as to the validity of the interest that a debtor is seeking to sell free and clear of, not merely an allegation that a dispute exists. *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004) (*citing In re Busick,* 831 F.2d 745, 750 (7th Cir.1987); *In re Octagon Roofing,* 123 B.R. 583, 590 (Bankr.N.D.Ill.1991)). It must be a good faith dispute not made solely for the purpose of satisfying the requirement under section 363(f)(4). *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996) ("[N]ot any alleged dispute satisfies the subsection. It clearly entails some sort of meritorious, existing conflict.") (*citing*, *In re Atlas Machine & Iron Works v. Bethlehem Steel,* 986 F.2d 709 (4th Cir.1993)); *In re Dewey Ranch Hockey, LLC*, 406 B.R. 30, 39 (Bankr. D. Ariz. 2009) (mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute). Here, there is no meritorious existing conflict as to a factual or legal dispute over PSB's interest in the Equipment and the Debtor fails to meet satisfy section 363(f)(4) and the Motion should be denied thereunder.

21. Third, to meet paragraph (5) under section 363(f), the Debtor would need to show that "such entity [holding the interest] could be compelled, in a legal or equitable proceeding, to accept a

---

[4] *In re Figueroa Mountain Brewing, LLC*, No. 9:20-BK-11208-MB, 2021 WL 2787880, at *8 (Bankr. C.D. Cal. July 2, 2021) ("'Bona fide dispute' is not defined in section 363(f)(4) or anywhere else in the Bankruptcy Code. The term 'bona fide dispute' is also found in section 303, and the Ninth Circuit, in interpreting the phrase for purposes of that section, defines it as the existence of 'an objective basis for either a factual or a legal dispute as to the validity of the debt.'") (*citing*, *In re Vortex Fishing Sys., Inc.,* 277 F.3d 1057, 1064 (9th Cir. 2002); *In re GGW Brands, LLC,* 2013 WL 6906375 at *24 (Bankr. C.D. Cal. November 15, 2013)).

9

money satisfaction of such interest." *See In re S. Mfg. Grp., LLC*, No. CV 15-00931-HB, 2016 WL 3344787, at *5 (Bankr. D.S.C. June 7, 2016). The proceeds of the Debtor's proposed sale would provide nothing to PSB and other secured creditors. Instead, the sale redirects proceeds away from PSB and to the estate. The Debtor has provided no legal or equitable proceeding that would compel such a result. The Debtor has therefore failed to meet its burden under section 363(f)(5) as well.

22. Ultimately, the Debtor has failed to meet its burden under section 363(f) to sell the Equipment free and clear of any interest, and the Debtor especially is unable to satisfy section 363(f) with respect to PSB which has a first priority blanket lien in the Equipment. The Court should therefore deny the Motion.

**C. The Motion Fails to Demonstrate That There is Adequate Protection of PSB's Interest in the Equipment in the Event the Court Approves the Sale.**

23. A sale under section 363(f) is subject to section 363(e), which conditions the sale on the provision of adequate protection. *In re PW, LLC*, 391 B.R. at 45 n.24 (B.A.P. 9th Cir. 2008). Section 363(e) of the Bankruptcy Code prohibits use of cash collateral or requires the court to condition such use by requiring the Debtor to provide adequate protection. 11 U.S.C. § 363(e). Section 363(e) expressly states, "in mandatory language, that the court 'shall prohibit or condition' the proposed sale 'as is necessary to provide adequate protection of such interest.'" *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 591 (Bankr. D. Ariz. 2009) (denying sale because bid did not adequately protect NHL's noneconomic interest); *see also*, *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 899–900 (9th Cir. 2017).

24. Section 361 addresses adequate protection and states that "[w]hen adequate protection is required under section …363…of an interest of an entity in property, such adequate protection may be provided by: (1) making cash payments to the extent of the decrease in the value of the secured creditor's interest in the property; (2) granting a replacement lien on other property to the extent of the

decrease in the value of the secured creditor's interest in the property; or (3) "granting such other relief… as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361; *see also*, *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d at 899–900.

25. "Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests **attached to the proceeds of the sale**." *In re PW, LLC*, 391 B.R. at 45 n.24 (emphasis added) (quoting H.R.REP. NO. 595, 95th Cong., 1st Sess. 345 (1977); S.REP. NO. 989, 95th Cong., 2d Sess. 56 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6301–02, 5787, 5842). This protection is specifically intended to guard against a situation where a sale under § 363(f) "results in a decrease in the value of such entity's interest in such property." *In re Nov. 2005 Land Invs., LLC*, 636 F. App'x 723, 726 (9th Cir. 2016) (*quoting*, 11 U.S.C. § 361(1)). Furthermore, pursuant to section 363(p), the Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p).

26. Here, the Debtor is arguing that PSB is adequately protected through an equity cushion and is not providing replacement liens or having PSB's interests attach to the proceeds of the sale of Equipment. Motion at ¶ 22. However, as discussed above, the Debtor's assertion of an equity cushion in favor of PSB is not supported by evidence included in the Motion and PSB has good reason to doubt the existence or extent of the purported equity cushion.

27. The Ninth Circuit Court of Appeals in *In re Mellor* defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." 734 F.2d 1396, 1400 n.2 (9th Cir. 1984).[5] Here, we do not know what the

---

[5] *In re Mellor*, however, was decided in the context of section 362, not section 363.

value of the property is as the Debtor has not submitted any evidence in support of the Motion that substantiates the fair value of the Equipment or remaining property of the Debtor that makes up PSB first priority blanket security interest. Indeed, the Ninth Circuit B.A.P. has found that "[f]air value of assets shall be measured by their fair market value if an active market for them exists. If no active market exists for the assets transferred but exists for similar assets, the selling prices in that market may be helpful in estimating the fair value of the assets transferred." *In re Arnold & Baker Farms*, 177 B.R. 648, 657 (B.A.P. 9th Cir. 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996); *but see*, *In re Fleming*, No. 6:17-BK-19513-MW, 2020 WL 1170722, at *4 (B.A.P. 9th Cir. Mar. 10, 2020) ("[In *Baker Farms*], We stated that the "fair value" method was an acceptable valuation procedure under the circumstances of that case, but we did not require any specific method for valuing property to be transferred as the indubitable equivalent of a secured claim.").

28. The Debtor has not shown, and cannot show on the record before the Court, that the indubitable equivalent of PSB's secured claim in the Equipment is satisfied through an equity cushion. Furthermore, even if the equity cushion in favor PSB does in fact exist as Debtor asserts, if the Debtor continues funding this case through piecemeal asset sales that erode PSB's collateral, how long will PSB be adequately protected with a clearly diminishing equity cushion?

29. Given that the Debtor has not shown that the Equipment is being sold at fair value, or that PSB will receive the indubitable equivalent of the fair value of the Equipment via an equity cushion, the Motion must be denied under section 363(e).

**D. The Debtor's Motion Also Fails to Provide Sufficient Information About the Material Consequences of the Sale of the Equipment, Including Any Gain or Loss on the Sale.**

30. The Debtor must provide sufficient evidence concerning the proposed transaction to establish that the sale is fair and that a good business reason exists. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996). In addition to proving that the proposed sale has a

12

2:23-bk-20019-BPH    Doc#: 77    Filed: 04/17/23    Page 12 of 15

valid business justification, the debtor must also show that the sale is proposed in good faith. *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr.C.D.Cal.1991). "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. *In re 240 N. Brand Partners, Ltd.,* 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996).

31. The proposed sale of the Equipment as contemplated by the Motion will have material consequences on creditors and parties in interest, including PSB, and the Motion does not provide sufficient information for creditors and parties in interest to fully and accurately analyze the impact of the sale of the Equipment in order to reach a meaningful conclusion on the fairness of the sale. Such information would need to include the potential tax implications the sale may have.

32. The Motion also provides no information about the adjusted tax basis of the assets that are being sold, the gain or loss on the sale of the assets, what, if any, depreciation recapture will occur as a result of the sale of depreciable assets, and what net operating losses, both pre-petition and post-petition, are available to reduce gains on the sale of assets. This information is crucial for creditors and interested parties to understand the potential impact the Sale of Equipment may have upon the bankruptcy estate's administrative expenses, tax impacts, and viability of any use of the proceeds from the sale of Equipment to fund this case.

## Conclusion

33. The Debtor has failed to meet its burden (i) under section 363(b) that there is a sound business reason for the sale of the Equipment, (ii) under section 363(f) that the Equipment may even be sold free and clear of PSB's liens, and (iii) under section 363(e) that PSB would be receiving the indubitable equivalent of its interest in the Equipment by having a speculative equity cushion in PSB's remaining collateral that continues to be eroded by the Debtor.

## Reservation of Rights

**WHEREFORE**, PSB expressly reserves all of its rights to assert additional objections to Debtor's Motion to Sell Property Outside the Ordinary Course of Business and/or to supplement this Objection at any time prior to or at any final hearing.

### **Prayer for Relief**

**WHEREFORE**, PSB prays that, upon hearing, the Court deny Debtor's Motion to Sell Property Outside the Ordinary Course of Business, and for other and further relief which the Court finds appropriate.

**DATED:** April 17, 2023

                                 **FELT MARTIN PC**

                                 By: */s Joseph A. Soueidi*
                                 Counsel for PSB Credit Services, Inc.

## CERTIFICATE OF SERVICE

  I, the undersigned, certify under penalty of perjury that on April 17, 2023, or as soon as possible thereafter, copies of the foregoing was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users: None.

**FELT MARTIN PC**

By:  */s Joseph A. Soueidi*
Counsel for PSB Credit Services, Inc.